## THE GENERAL TIRE AND RUBBER CO. v. DISTRIBUTORS, INC.

(Filed 14 December, 1960.)

1. Trial § 36—

> While the form and number of issues ordinarily rest in the sound discretion of the trial judge, the judge is required to submit such issues as are necessary to settle the material controversies raised by the pleadings and to support the judgment.

**2. Claim and Delivery § 2—**

In claim and delivery, defendant's answer denying plaintiff's right to immediate possession and defendant's wrongful detention of the goods raises these issues for the determination of the jury, and the submission of issues determining only whether plaintiff wrongfully took possession of the goods is insufficient, since even if it be established that plaintiff did not wrongfully take possession of the goods it would not follow that defendant had wrongfully detained them or that plaintiff has the right of permanent possession as against defendant so as to support judgment that plaintiff is entitled to keep possession of the goods.

**3. Frauds, Statutes of § 1—**

A contract consigning goods to be stored in the consignee's warehouse, with provision for payment as the goods are withdrawn, is not required to be in writing. G.S. 22-1.

**4. Contracts § 5—**

A written contract which does not come within the purview of the statute of frauds may be modified by subsequent parol agreement.

**5. Consignment Contracts § 1—**

Where a consignment agreement between a manufacturer and a distributor provides that the agreement is terminable upon three days notice by either party, a subsequent agreement that the distributor should make monthly payments, so as to purchase the inventory within three years, modifies the original agreement as to the three days notice, and precludes the manufacturer from terminating the contract within three years except for breach of the contract by the distributor in failing to make payment for current withdrawals or failure to pay the monthly installments on the purchase price as specified in the contract.

**6. Claim and Delivery § 2—**

In this action to recover possession of certain merchandise consigned by plaintiff to defendant under a contract stipulating that defendant was to purchase the inventory in monthly installments over a period of three years and also pay for current withdrawals, plaintiff is entitled to repossess the goods only upon breach of the contract by defendant in failing to make the payments as stipulated, and it is error for the court to place the burden of proof upon defendant to prove that plaintiff's seizure and retention of the goods under claim and delivery was wrongful.

**7. Evidence § 5—**

The parties have a substantial right in the correct placing of the burden of proof, which ordinarily rests on that party asserting the affirmative of the issue.

**8. Claim and Delivery § 2—** Defendant asserting special damages resulting from seizure of goods under claim and delivery has burden of proving quantum of damages.

Where a manufacturer seizes goods which it had consigned to its

distributor for failure of the distributor to make payments on the purchase price and payment for current withdrawals as specified in the consignment contract, the distributor's answer setting up a denial of the manufacturer's right to immediate possession and asserting that the repossession of the goods by the manufacturer was wrongful and resulted in a breach of the collateral distributorship contract, in effect sets up a counterclaim for special damages, and while no recovery may be had on the counterclaim if the manufacturer was entitled to seize and retain possession of the goods, if the issues of right to immediate possession and wrongful detention of the goods should be answered in favor of the distributor, the burden of proof would be upon the distributor on the counterclaim to prove wrongful breach of the distributorship contract by the manufacturer and the *quantum* of damages.

**9. Principal and Agent § 3—**

When a distributor contract is for an indefinite time, it is terminable at the will of either party upon reasonable notice, and what constitutes reasonable notice depends upon the facts and circumstances of each case, and is ordinarily a mixed question of law and of fact.

**10. Same—**

In determining what is a reasonable time for the termination of a distributor contract, the amount of promotional expenditures incurred by the distributor, the length of time the contract had been in operation before notice of termination, prospects for future profits, and whether the contract had proven profitable up to the time of notice, are all circumstances to be considered with the other circumstances of the particular case.

**11. Contracts § 29—**

The measure of damages for the wrongful termination of a distributor contract by the manufacturer is ordinarily the loss of prospective net profits of which the distributor was deprived by such wrongful termination insofar as they can be ascertained and measured with reasonable certainty, and where the contract specifically stipulates that the distributor should bear the promotional expenses, such expenses are not recoverable.

**12. Contracts § 5—**

Subsequent parol negotiations which do not reach the stage of an agreement of the parties cannot modify the original contract, and are properly disregarded in ascertaining what is the agreement of the parties, but may be considered only insofar as they bear upon the issue of damages.

**13. Claim and Delivery § 5: Damages § 10—**

Where the consignor seizes and retains the goods in claim and delivery under *bona fide* claim of right based upon breach of the contract of consignment by the consignee, the consignee may not recover punitive damages even though the consignor's seizure be wrongful, since punitive damages may be awarded only for a wrong done willfully or under circumstances of rudeness, oppression, or reckless and wanton disregard of the rights of claimant.

APPEAL by defendant from *Campbell, J.*, 28 March 1960 Civil "B" Term, of MECKLENBURG.

This is a civil action instituted by The General Tire and Rubber Company, an Ohio corporation, plaintiff, against Distributors, Inc., a North Carolina corporation with its principal office in Charlotte, defendant. Action was commenced 24 March 1958 by issuance of summons and ancillary proceedings in claim and delivery. Plaintiff sues for possession of certain merchandise consigned by it to defendant and stored in defendant's warehouses in Charlotte and Greensboro. Plaintiff alleges that it is the owner and entitled to the immediate possession of the merchandise, and that same is wrongfully detained by defendant. Defendant denies that plaintiff is entitled to the possession of the merchandise, denies that it was wrongfully detained, and counterclaims for damages for breach of distributorship contract on the part of plaintiff.

Trial was had before judge and jury. Issues were submitted to and answered by the jury as follows:

"1. Did the plaintiff wrongfully take its inventory from the defendant's warehouses in March 1958? Answer: No.

"2. If so, what amount is the defendant entitled to recover of the plaintiff? Answer: (no answer)."

The court entered judgment declaring plaintiff entitled to "keep and retain" the merchandise, denying recovery by defendant on its counterclaim, and taxing defendant with the costs.

Defendant appealed and assigned errors.

*Orr, Osborne & Hubbard for plaintiff.*
*Ralph C. Clontz, Jr., for defendant.*

MOORE, J. This case was here at the Fall Term, 1959. In the opinion delivered by *Bobbitt, J.*, the judgment of the court below sustaining a demurrer to defendant's counterclaim was reversed. *Rubber Co. v. Distributors*, 251 N.C. 406, 111 S.E. 2d 614. The pleadings are summarized in that opinion and there is no necessity for a comprehensive review of the pleadings on this appeal. We set out herein a general survey of the transactions between the parties and refer to the pleadings only when necessary to an understanding of the questions presented.

The plaintiff manufactures Bolta-Floor vinyl flooring and other floor covering products. In July 1956 plaintiff and defendant entered into a parol agreement whereby defendant became the sole and exclusive distributor of plaintiff's line of floor covering products for

North and South Carolina, effective 30 July 1956, for "an indefinite period of time . . . so long as defendant made reasonable efforts to promote said products. . . ." (Quotation is from article V of defendant's counterclaim). Defendant offered evidence that the distributorship was to continue a minimum of seven years, two years to promote and establish the line and five years for profitable operation to recoup promotion costs. However, this testimony as to definite time is contrary to defendant's pleadings. Plaintiff offered evidence that the distributorship was to continue as long as the parties could "mutually work with one another and mutually profit by the association."

Defendant was required to dispose of a competitive line of products which it had been selling and distributing prior to the making of this contract. This was done.

Defendant agreed to promote plaintiff's products in the Carolinas at its own expense. It was a new line which had been put on the market 1 January 1956. According to defendant's evidence the promotion entailed considerable cost and involved the acquiring of dealers, local advertising, furnishing samples and displays to dealers and others, and personal calls on architects. According to plaintiff no extra expense for promotion was contemplated for the reason that defendant was already established in this type of business and liberal quantities of samples and advertising matter would be and were furnished by plaintiff.

Defendant had insufficient working capital to purchase and store in its warehouses an adequate inventory of floor covering products to implement and maintain the distributorship. As a credit arrangement, the parties executed in writing a "Warehouse Agreement" or consignment contract dated 30 July 1956. It provides that merchandise be consigned to defendant and placed in defendant's warehouses, title is to remain in plaintiff until the goods are disposed of in the course of business, defendant is to furnish monthly inventories of the consigned goods and lists of transfers to and from stock and make weekly reports of withdrawals, defendant is to make financial statements of its business upon request and make payments monthly for withdrawals from inventory, and breach of the agreement shall be just cause for termination and the agreement may be "cancelled by either party at any time upon three days' written notice." It was orally agreed that the consigned inventory should be approximately $30,-000.00 in value.

Plaintiff says that there was parol understanding that the warehouse agreement would be terminated at the end of one year, at

which time defendant was to purchase and pay for the inventory. Defendant says it was a permanent arrangement to last as long as the distributorship. However, there was a new agreement in July 1957 respecting this matter. Plaintiff agreed to continue consigning the goods as before for the ensuing three years, and defendant was given three years to consummate the purchase of the inventory. At the first of each month plaintiff was to bill defendant for 1/36 of the inventory of the warehouses as of the end of the preceding month, and defendant was to pay these billings along with the current accounts. The payments on inventory were to be kept in a trust fund and at the end of the 36 months period be applied to the purchase and title would then pass to defendant. Plaintiff agreed to withdraw from the warehouses slow-moving items, and its representative was to inspect and agree upon the items to be withdrawn. These items were not removed until December 1957.

In the latter part of 1957 and until June 1958 defendant was in arrears in payment of its current accounts up to $5500.00. It never paid any installments for purchase of the consigned merchandise. Defendant explained that it had in its files for several months a check for payment of the arrearage in current accounts, but did not transmit it or pay the purchase installments for the reason that slow-moving goods were not withdrawn from the inventory promptly and the installment billings were not correct.

In January 1958 plaintiff advised that defendant's business was getting shaky and requested guaranties signed by defendant's stockholders. On 24 February 1958 defendant offered to make arrangements for a cash purchase of inventory, requested a conference and asked 30 days to put affairs in order. On 28 February 1958 plaintiff demanded guaranties or surrender of the inventory. Defendant did not furnish guaranties from stockholders, but sent the personal guaranties of its president and vice-president and their wives.

On 6 March 1958 plaintiff wired defendant requesting surrender of the consigned goods. On 24 March 1958 this action was commenced. The merchandise was seized under claim and delivery proceedings, held by the sheriffs for three days and delivered to plaintiff in default of replevin bond.

Thereafter, defendant offered again to purchase the inventory and at the trial explained that it had made arrangements with a New York factor for the necessary funds. Defendant continued to take orders for plaintiff's products and either sent the orders directly to plaintiff or filled them on a cash basis from a warehouse in Char-

lotte maintained by plaintiff. Plaintiff required that the orders mailed to it be accompanied by cashiers' checks.

There was a conference and discussion by the parties on 1 May 1958. Defendant contends a new contract was made whereby the warehouse agreement was reinstated, a credit arrangement for current withdrawals of merchandise was agreed upon, and the distributorship continued. According to defendant's version it was to immediately pay the $5500 arrearage and furnish the personal guaranties of its president and vice-president in the amount of $3000 each to secure current accounts. The past due account was paid in full in June 1958. The guaranties were submitted. Plaintiff contends no contract was made, that it agreed to consider reinstatement of the warehouse agreement and the arrangement for current credit provided defendant would pay its account in full, furnish a satisfactory financial statement, and give acceptable guaranties supported by a showing of solvent assets other than investments in defendant corporation and homes of guarantors.

Plaintiff advised defendant that the financial status of defendant corporation and the guarantors was not satisfactory and declined further credit.

Defendant filed answer in this action on 18 July 1958 and set up a counterclaim for $50,000 damages for breach of contract and $100,000 punitive damages for wilful, wanton and malicious conduct of plaintiff in breaching the contract.

Plaintiff gave no notice of termination of the distributorship until after defendant had filed its counterclaim.

Defendant offered testimony that it had expended $22,915.91 in promoting plaintiff's line of floor covering in the Carolinas.

Defendant is now insolvent. Its balance sheet for the year ending 31 August 1956 showed a net operating loss of $414.58, and for the year ending 31 August 1957 a net operating loss of $10,900. During the fiscal year 1956-1957 the ratio of its assets to liabilities declined from 1.26 to 1, to 1.16 to 1, and the book value of stock from $98.57 to $64.58.

Appellant makes twenty-two assignments of error. Only three merit discussion. Defendant's motion for nonsuit at the close of the evidence was properly overruled.

The questions for consideration are: (1) Were the issues submitted by the court sufficient in form and substance to present all phases of the controversy? (2) Did the court err in placing the burden of proof on defendant? (3) Did the court err in its instructions on damages?

Issues arise upon the pleadings only. G.S. 1-196. *Darroch v. Johnson,* 250 N.C. 307, 311, 108 S.E. 2d 589. An issue of fact arises on the pleadings whenever a material fact is maintained by one party and controverted by the other. *Wells v. Clayton,* 236 N.C. 102, 105, 72 S.E. 2d 16. Ordinarily the form and number of issues in a civil action are left to the sound discretion of the judge. *Lumber Co. v. Construction Co.,* 249 N.C. 680, 685, 107 S.E. 2d 538. ". . . it is the duty of the Judge, either of his own motion or at the suggestion of counsel, to submit such issues as are necessary to settle the material controversies arising in the pleadings, and . . . in the absence of such issues, or admissions of record equivalent thereto, sufficient to reasonably justify, directly or by clear implication, the judgment rendered therein, this Court will remand the case for a new trial." *Tucker v. Satterthwaite,* 120 N.C. 118, 122, 27 S.E. 45. G.S. 1-200; *Nebel v. Nebel,* 241 N.C. 491, 502, 85 S.E. 2d 876.

In an action for possession of personal property, wherein ancillary proceeding in claim and delivery is issued, an affidavit is required declaring that plaintiff is the owner of the property claimed or is lawfully entitled to its possession by virtue of a special property therein, and that the property is wrongfully detained by the defendant. G.S. 1-473. *Acceptance Corp. v. Waugh,* 207 N.C. 717, 719, 178 S.E. 85. A defendant's denial of the allegation that it is in the wrongful possession of the personal property in question raises an issue for the jury. *Coulbourn v. Armstrong,* 243 N.C. 663, 666, 91 S.E. 2d 912.

In the instant case plaintiff alleges that it is "the owner and entitled to the immediate possession" of the consigned merchandise and "that said property is wrongfully detained by the defendant. . . ." Defendant admits that plaintiff is the "titleholder" of the merchandise, but denies "that the plaintiff is or was entitled to immediate possession" thereof and denies that it wrongfully detained the property. These pleadings raise an issue or issues of fact as to whether plaintiff was on 24 March 1958 entitled to immediate possession of the property and whether defendant wrongfully detained it. The issues submitted by the court are not sufficient to determine these questions. The jury verdict purports to decide only that plaintiff did not wrongfully take its inventory from defendant's warehouses in March 1958. ". . . a verdict should be certain and import a definite meaning free from ambiguity and sufficient in form and substance to support a judgment. . . ." *Coulbourn v. Armstrong, supra.* From the fact that plaintiff did not wrongfully take the inventory, it does not

necessarily follow that defendant wrongfully detained it or that plaintiff had the right of permanent possession as against defendant. The vital issue was not submitted to the jury. *Bank v. Broom Co.,* 188 N.C. 508, 510, 125 S.E. 12. The issues submitted do not support the judgment "that the plaintiff is entitled to keep and retain the inventory and stock of merchandise. . . ."

The trial court may have concluded that there were admissions which rendered it unnecessary for the jury to determine this initial phase of the case. The original "Warehouse Agreement," pleaded by both parties, provides that it may be "canceled by either party at any time upon three days' written notice." And there was a stipulation "That plaintiff made due demand for return of . . . merchandise. . . ." The original "Warehouse Agreement" was not a contract required by law to be in writing. G.S. 22-1. The provisions of such a written contract may be modified by a subsequent parol agreement. *Whitehurst v. FCX Fruit and Vegetable Service,* 224 N.C. 628, 636, 32 S.E. 2d 34. It was admitted by both parties that an agreement was reached in July 1957 whereby defendant was to purchase and become the owner of the inventory by making monthly payments over a period of three years, at the end of which period title would pass. This abrogated the three days' notice provision and entitled defendant to retain possession for the three-year period provided it made the payments as agreed or was excused therefrom by conduct of plaintiff and performed the other provisions of the contract on its part. *Erskine v. Motors Co.,* 185 N.C. 479, 491, 117 S.E. 706. A termination of the contract upon three days' notice is repugnant to an installment purchase agreement. As stated in the opinion on the former appeal in this case: "It (plaintiff) did not have such right (to immediate possession), notwithstanding title thereto was in plaintiff until disposed of in accordance with the provisions of the 'Warehouse Agreement,' if it was agreed that the 'Warehouse Agreement' and the distributorship were to continue until July 31, 1960." *Ibid,* pp. 411-2. (Parentheses added.) To this statement we add the following proviso: unless plaintiff show a breach of the contract as modified by the parol agreement of July 1957. Proof of three days' written demand for possession of the inventory and refusal by defendant do not entitle plaintiff to immediate possession. To entitle plaintiff to possession there must be proof of a breach of the contract, such as an unjustifiable nonpayment of current accounts or purchase installments, or unsatisfactory operation. If defendant breached the contract, its detention of the goods was wrongful and plaintiff was entitled to possession — otherwise not. There

was evidence of such breach, but defendant's evidence on this record tended to controvert it. It was for the jury to determine. The court was in no position to assume a breach on the part of defendant.

The court placed the burden of proof of the first issue upon defendant. The burden of proof as to plaintiff's alleged right of immediate possession and defendant's wrongful detention of the property is on the plaintiff. *Smith v. Cook,* 196 N.C. 558, 559, 146 S.E. 229. "The burden of proof constitutes a substantial right. The burden of proof on an issue ordinarily rests on the party who asserts the affirmative thereof. . . ." Strong: N. C. Index, Vol. 2, Evidence, s. 5, pp. 248-9. *White v. Logan,* 240 N.C. 791, 792, 83 S.E. 2d 892; *Benner v. Phipps,* 214 N.C. 14, 15, 197 S.E. 549.

There must be a new trial. Ordinarily we do not chart the course of the retrial. But because of the novelty in this jurisdiction of some of the questions raised we have decided that some general discussion will be helpful.

Obviously, if the issue or issues above indicated are answered in favor of plaintiff, the jury need not consider defendant's counterclaim for damages. If defendant breached the contract, entitling plaintiff to possession of the property, it could not benefit from its own wrong or default and would not be entitled to damages. But, if the jury should resolve the indicated issue or issues in favor of defendant, then the jury should pass upon the final issue: What damages, if any, is defendant entitled to recover of plaintiff?

"In an action for the recovery of specific personal property . . . if they (the jury) find in favor of the defendant, and that he is entitled to a return thereof, they may at the same time assess the damages, if any are claimed in the complaint or answer, which the prevailing party has sustained by reason of the detention or taking and withholding the property." G.S. 1-203. See also G.S. 1-230. It will be observed that defendant does not ask for a return of the property. It treats the contract as breached by the conduct of plaintiff and asks damages. On this record, if the contract was terminated by plaintiff so as to entitle defendant to damages, it was by reason of the taking of the inventory under claim and delivery and the withholding thereof from defendant. Defendant's counterclaim is in effect a pleading of special damages for plaintiff's taking and withholding the merchandise.

The original contract between the parties was partly written and partly oral. It consisted of the parol agreement making defendant exclusive distributor of the floor covering products in the Carolinas, and the written "Warehouse Agreement" arranging credit. The con-

tract was modified by the oral purchase agreement of July 1957. There was no actual interference with defendant's operations until the inventory was seized under claim and delivery in March 1958. Defendant's contentions seem to be, and the trial judge so understood them, that the taking and withholding of the inventory worked a breach of the entire contract, that it was impossible to maintain the distributorship on a profitable basis without a stock of goods and credit, and damages should be allowed for the conduct of plaintiff in seizing and withholding the inventory. So upon the damage issue the burden is on the defendant to satisfy the jury by the greater weight of the evidence: (1) that the seizure and withholding of the inventory by plaintiff effected a breach of the distributorship contract, and (2) the *quantum* of damages resulting therefrom.

In most respects the charge of the court on the issue of damages was correct — especially with respect to prospective profits. But defendant contends there was error in that the court's instructions did not permit recovery for expenditures made by defendant in promoting the distributorship. It is our opinion that the court, on this record, did not err in this respect. But a discussion of this phase of the case is in order.

The distributorship contract was for an indefinite period. Defendant's answer so alleges. "A contract for an indefinite period, which by its nature is not deemed to be perpetual, may be terminated at will on giving reasonable notice." 17 C.J.S., Contracts, s. 398, p. 887. *Erskine v. Motors Co., supra; Fulghum v. Selma,* 238 N.C. 100, 76 S.E. 2d 368; *Metals Corp. v. Weinstein,* 236 N.C. 558, 73 S.E. 2d 472. "Reasonable time is generally conceived to be a mixed question of law and fact." *Trust Co. v. Insurance Co.,* 199 N.C. 465, 469, 154 S.E. 743. Williston in discussing agency or distributor contracts says:

"(3) Where the agreement contains no provision whatever for its termination.

"Quite properly this has been held an enforceable executory contract, binding upon each party for a reasonable time. It is the settled law of agency that if the agent or employee furnishes a consideration in addition to his mere services, he is deemed to have purchased the employment for at least a reasonable period where the duration of the employment is not otherwise defined. A similar result should be reached though the dealer is a buyer-distributor rather than a technical agent, where in addition to undertaking to pay for the manufacturer's products

as ordered, he promises to establish or maintain adequate sales and demonstration facilities or to provide a maintenance and repair service for handling said products."

Williston on Contracts, Rev. Ed., Vol. 4, S. 1027A, p. 2852.

In *Elson & Co. v. Beselin & Son* (Neb. 1928), 218 N.W. 753, 756, an exclusive sales agency case, it is said: "Where the continuation of a contract is without definite duration the law implies a reasonable time, and what is a reasonable time is to be determined from the general nature and circumstances of the case. When the obligor has expended a substantial sum of money or value or has substantially rearranged his business, as in this case, preparatory to engaging upon the terms of agreement for the benefit of obligee, he ought, through fairness, to have a reasonable time and notice of the cancellation of the contract in order that he might have a reasonable opportunity to put his house in order." Also see *Erskine v. Motors Co., supra; Jack's Cookie Co. v. Brooks* (CC4C 1955), 227 F. 2d 935, cert. den'd. 351 U.S. 908; *Brooks v. Cookie Co.* (CC4C 1956), 238 F. 2d 69.

In *Allied Equipment Co. v. Weber Engineered Products* (CC4C 1956), 237 F. 2d 879, plaintiff had an exclusive distributor contract which was cancelled by defendant. The contract was oral. Plaintiff contended that it was to develop a distribution system in the territory, and that in doing so it had expended large sums of money and should be allowed to recover therefor. The court said: "On this first question we hold therefore that, if, pursuant to an understanding with Weber, Allied expended sums of money in developing a distributorship system for Weber products throughout Virginia, it was entitled to the right of distributorship for such a period of time as would enable it to recoup these and any other expenditures which with the knowledge of Weber it incurred in reliance upon the arrangement." *Ibid.*, p. 882.

The case of *Erskine v. Motors Co., supra,* is in some respects similar to the instant case. It is reported in 32 A.L.R. 196, forms the basis for an extended annotation, and is widely cited throughout the country. Plaintiffs and defendant entered into a contract whereby plaintiffs would be exclusive sales agents in the Asheville and Hendersonville areas for automobiles manufactured by defendant. The contract provided that either party could cancel upon five days' notice. A third party claimed the agency rights and at once began interfering with the arrangement. Plaintiffs offered to give up the dealership. Defendant assured plaintiffs they could retain the

contract, the contract would not be cancelled, and defendant would assist plaintiffs in making a success of the business. Defendant accepted orders for 276 automobiles to be shipped during the ensuing eight months period. Plaintiffs leased a building, purchased equipment, contracted for advertising, employed salesmen, and incurred other expenses. After two months defendant cancelled the contract and refused further shipments. Plaintiffs sued for damages. The court held that plaintiffs had a good cause of action and declared: "The measure of damages is the difference between the contract prices at which the automobiles were to be delivered to plaintiffs . . . and the market value of the automobiles during the period fixed by the contract for their delivery. . . ." With reference to the expenses incurred by plaintiffs in preparation and furtherance of the agency, the court said that the language and conduct of defendant were such as "to impress the plaintiffs to believe that they should go safely ahead with their projected scheme as agents or distributors . . . and make the anticipated expenditures . . ." and "If we (the court) should hold that plaintiffs have no legal right to be reimbursed for their outlay, under such circumstances, and to recover their reasonable and certain profit thus promised to them, would be to disregard all well settled principles in like cases." (Parentheses ours.) Thus, it seems, the court ruled that plaintiffs' preparatory expenses were recoverable in that case.

In the instant case defendant, according to its own allegations, agreed to bear the cost of promotion, as a part of the consideration for the contract. And as said in *Lumber Co. v. Plaster Co.* (Ala. 1913), 62 S. 560, "Without the consideration he was not entitled to the profits, and with the profits he is not entitled to a return of the consideration."

In 17 A.L.R. 2d, Anno: Breach of Contract — Expenditures, s. 8, p. 1318, in discussing the rule as applied to distributors' contracts, it is said: "Even if the contract contemplates preliminary expenditures of time or money by the agent or buyer — as for advertising or traveling or even leasing and fitting up salesrooms — he cannot recover these in addition to his prospective profits on the articles to be sold, figured, for example, as the difference between the price to him and the price at which they would be sold, less the future cost of selling them." Also see *Holton v. Motor Car Co.* (Mich. 1918), 168 N.W. 539.

In the foregoing annotation (17 A.L.R. 2d p. 1319) the *Erskine* case is discussed as follows: "It is to be noticed that the immediate selling profits on the automobiles would be the difference be-

tween the purchase price and the selling price. But it cannot well be assumed that the court intended that these should be recovered and the outlay in addition. If the profits were to be taken as the difference between the total sales during the period of the contract and the purchase price of the automobiles to be sold with these expenses added, the case would be different. If this probable net operating income was what was meant by the court, the *dictum* is not contrary to the general rule that the plaintiff cannot recover the profits and what he would have sustained anyway if the contract had been performed."

In any event, the *Erskine* case, as to damages, seems easily distinguishable from the instant case. In *Erskine,* the breach occurred almost immediately after the making of the contract, the expenditures were induced by promises which defendant apparently did not intend to keep at the time it made them, and recovery of profits was limited to those orders already accepted by defendant. In the instant case the contract had run for nearly two years, the expenditures for promotion were a part of the consideration for the contract, both parties had derived benefits therefrom, defendant had specifically assumed the payment thereof, and recovery of prospective net profits, if any, is permitted during a period which, under the circumstances, constitutes a reasonable time.

Where the duration of a distributor contract is indefinite and distributor has expended substantial sums in establishing and promoting the distributorship and such expenditures were within the contemplation of the parties, the contract may be terminated after the lapse of a reasonable time. What a reasonable time is depends upon the circumstances in the particular case. Among the circumstances to be considered in determining reasonable time are: The amount of preliminary and promotional expenditures, the length of time the distributorship has been in operation before notice of termination, what the prospects for future profits are, and whether it has proven profitable during actual operation. It is not a question of whether distributor has recouped his expenditures, but whether he has had a fair opportunity. In the case at bar, there is a dispute as to whether any additional promotional expenses were contemplated. There is evidence that the business has been increasingly unprofitable. In short, the expenditures are not recoverable as such, but are evidence to be considered along with the other evidence in the case in determining whether distributor has been given a reasonable period for enjoyment of the contract.

Under the agreement of July 1957, it was contemplated that the distributorship would continue until July 31, 1960, at least, provided defendant lived up to the contract, paid the purchase installments and current accounts, and showed a satisfactory operation. It is for the jury to determine whether defendant was permitted to retain the distributorship for a reasonable time, and, if not, to ascertain the damages, if any, he reasonably suffered by the alleged wrongful termination. As indicated by the court in its charge, the recovery, if any, would be those net profits which can be ascertained and measured with reasonable certainty during that period, if any, beyond the date of the seizure of the inventory which would constitute reasonable time under the circumstances.

The court in its charge made no reference to the alleged agreement of 1 May 1958. In this we find no error. The record discloses that the arrangement proposed in the conference on that date did not get beyond the negotiation stage. There was no meeting of the minds. Mr. Carson, defendant's president, testified: "With reference to the original distributorship, Mr. Towsley (plaintiff's credit manager) said we would go back to that agreement whereby we were being consigned the merchandise. Mr. Towsley also said that we must pay off the outstanding approximately $5500 we owed General Tire & Rubber Company, and we must release General Tire & Rubber Company from any damages we had suffered as a result of that action." A detailed discussion of the negotiations is unnecessary. It suffices to say that there is no evidence that a release was ever executed or tendered plaintiff. Instead, defendant filed its answer and counterclaim. Apparently, if an agreement had been reached, it was contemplated that it be a novation. Whether the making of such an agreement would have improved defendant's position in this case, *quaere*. However, evidence of the negotiations is competent insofar as it bears on the issue of damages.

The court correctly refused to submit an issue as to punitive damages. Punitive damages may be awarded only where the wrong is done wilfully or under circumstances of rudeness, oppression or in a manner which evinces a reckless and wanton disregard of the litigant's rights. *Hinson v. Dawson*, 244 N.C. 23, 27, 92 S.E. 2d 393; *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 344, 88 S.E. 2d 333. Neither the pleadings nor the evidence on this record will support an award of punitive damages.

New trial.