BECK DISTRIBUTING CORPORATION v. IMPORTED PARTS, INCORPORATED

No. 7010SC195

(Filed 1 April 1970)

1. Accounts § 1;   Sales § 10;   Set-offs—   action for goods sold on open account — nonsuit of counterclaim and setoff based on exclusive distributorship agreement

In this action to recover an amount allegedly owed by defendant for the purchase of merchandise on open account, the trial court did not err in nonsuiting defendant's counterclaim based upon breach of a purported exclusive distributorship agreement, and in nonsuiting defendant's set-off

based on the purported distributorship agreement for parts in its inventory supplied by plaintiff, where the evidence admitted by the court, together with evidence excluded by the court but placed in the record by defendant, is insufficient to show that an exclusive distributorship agreement was ever entered into by the parties either orally or in writing.

**2. Contracts §§ 7, 26; Principal and Agent § 1— exclusive distributorship agreement — conduct of the parties**

No special distributorship relationship arose by implication out of the conduct of the parties where a formal written distributorship agreement tendered by plaintiff on several occasions was never executed by defendant, but plaintiff nevertheless continued to sell parts to defendant on open account and allowed certain discounts and other privileges that were enjoyed by companies that had executed a distributorship agreement, defendant having been under no legal obligation to purchase parts exclusively from plaintiff or to fulfill any of the other obligations required by plaintiff of a distributor.

**3. Principal and Agent § 3; Contracts § 17— distributorship contract — termination — action for amount owed on account — notice**

A distributorship contract for an indefinite period of time is terminable at the will of either party upon reasonable notice, and what constitutes reasonable notice depends upon the facts and circumstances of each case; where a defendant fails and refuses to make payment for goods furnished under such an agreement, it does not follow that plaintiff has to give notice before bringing suit on the account or attaching defendant's property if adequate grounds for attachment exists.

**4. Accounts § 1; Set-offs— set-off for return of merchandise in inventory — sufficiency of evidence**

In this action to recover an amount allegedly owed by defendant for the purchase of merchandise on open account, defendant's allegations that it was entitled to return its inventory of merchandise supplied by plaintiff and receive full credit for its cost plus freight charges was negated, not supported, by defendant's evidence that an attorney who was a fiduciary of defendant's president had written letters to plaintiff that he would guarantee defendant's account if merchandise could be returned for credit at invoice price less 20%, and the letters, if they establish any right to return merchandise, show that the right would be that of the attorney fiduciary and not that of defendant.

**5. Trial § 31— peremptory instructions**

Where, in an action to recover an amount allegedly owed by defendant for the purchase of merchandise on open account, the trial court properly nonsuited defendant's counterclaim and set-off, and the parties stipulated the amount of the account between plaintiff and defendant, the trial court properly gave the jury peremptory instructions in favor of plaintiff, the only thing to be determined by the jury being the credibility of the evidence which included the stipulation.

APPEAL by defendant from *Bailey, J.,* 17 November 1969 Regular Civil Session of WAKE County Superior Court.

Plaintiff, a New York corporation, is engaged in the business of importing and selling parts for foreign automobiles. Defendant corporation sells and distributes such parts in North Carolina and is a former customer of plaintiff. On 19 July 1967 plaintiff instituted this action seeking to recover $15,610.74 allegedly owed by defendant for the purchase of parts and merchandise on open account. Proceedings for attachment were instituted ancillary to the action and on the same date. In an amended answer defendant did not deny that it had an account with plaintiff but alleged that it was entitled to have set-off against the account credit for certain parts that had been returned to plaintiff. A second set-off was claimed for the costs of all parts supplied by plaintiff and in defendant's inventory at the time this action was brought.

Defendant also asserted two counterclaims, alleging in the first that plaintiff had breached an exclusive distributorship agreement and in the second that plaintiff had caused defendant's property to be wrongfully attached. The counterclaim for wrongful attachment was stricken by the court upon motion of the plaintiff and defendant did not except.

When the case came on for trial the parties disposed of defendant's first set-off by stipulating that defendant was entitled to all credits claimed for parts and merchandise returned before suit was filed. The parties also stipulated and agreed "that the amount of the account between the plaintiff and defendant amounts to $12,-425.64."

At the conclusion of defendant's evidence the court allowed plaintiff's motion for nonsuit of defendant's remaining counterclaim and set-off and gave to the jury peremptory instructions on the issue of the amount owed plaintiff by defendant. The jury answered the issue as instructed and from judgment imposed on the verdict defendant appealed.

*Boyce, Mitchell, Burns and Smith by Robert E. Smith for plaintiff appellee.*

*Everett & Creech by Robinson O. Everett for defendant appellant.*

GRAHAM, J.

Defendant challenges the court's action in nonsuiting defendant's counterclaim and set-off and giving peremptory instructions in favor of plaintiff. The form of the peremptory instructions is not questioned.

**[1]**   In its amended answer defendant alleged that automobile parts and merchandise were supplied to it by plaintiff ". . . pursuant to an agreement and understanding between the parties, whereby the defendant was granted an exclusive right to sell these parts supplied by the plaintiff within a territory agreed upon by the parties." Defendant's counterclaim was for the breach of this alleged agreement. The agreement also furnished the basis for the set-off because defendant alleged that pursuant to the agreement plaintiff was obligated to accept return of merchandise in defendant's inventory and to reimburse defendant for the costs of the merchandise plus freight charges. No rights to affirmative relief were alleged by defendant other than those allegedly arising out of the "exclusive distributorship agreement." Thus, unless defendant could establish the existence of such an agreement, the only question in the law suit was the amount of the account.

The trial court, relying on the provisions of G.S. 75-4, ruled that any exclusive distributorship agreement not in writing and signed by plaintiff was unenforceable and refused to permit defendant to attempt to show the existence of such an oral agreement. G.S. 75-4 provides as follows:

"No contract or agreement hereafter made, limiting the rights of any person to do business anywhere in the State of North Carolina shall be enforceable unless such agreement is in writing duly signed by the party who agrees not to enter into any such business within such territory: . . ."

Defendant assigns this ruling by the court as error contending that G.S. 75-4 does not apply because defendant does not seek to limit the right of plaintiff or anyone else to do business in the State of North Carolina but seeks to recover for plaintiff's refusal under the terms of its distributory agreement to do further business with defendant or to permit defendant to return and receive credit for the inventory on hand.

**[1]**   In our opinion it is not necessary in this case to determine whether or not G.S. 75-4 is applicable where as here a party attempts to enforce provisions of an oral exclusive distributorship agreement other than those provisions of the agreement which limit a party's right to do business anywhere within the State of North Carolina. Defendant placed the evidence excluded by the court in the record and it is now before us. Considering this evidence, along with all other evidence, in the light most favorable to defendant we think it insufficient to show that an agreement such as alleged by defendant was ever entered by the parties either orally or in writing.

[2]    Defendant contends that a special distributorship relationship arose by implication out of the conduct between the parties and entitled defendant to reasonable notice before plaintiff terminated the relationship by bringing this suit and having defendant's property attached. We do not agree. Defendant concedes that a formal written distributorship agreement was tendered by plaintiff on several occasions. The proposed agreement was never executed by defendant although plaintiff repeatedly requested that it do so. Plaintiff nevertheless continued to sell parts to defendant on open account and allowed certain discounts and other privileges that were enjoyed by companies that had executed a distributorship agreement. However, this evidence, standing alone, does not show that defendant's relationship with plaintiff was other than that of a customer who purchased merchandise from plaintiff on open account. Defendant was under no legal obligation to purchase parts exclusively from plaintiff or to fulfill any of the other obligations required by plaintiff of a distributor. Not having assumed the burdens of a distributor, defendant is not now entitled to claim the benefits.

[3]    Even if there had been a distributorship relationship defendant would not have been entitled to special notice before plaintiff filed suit. The evidence is uncontroverted that plaintiff had made repeated attempts to collect defendant's overdue account over a considerable period of time, and that immediately before plaintiff instituted this action defendant executed a note to its president and sole shareholder and secured the note with a chattel mortgage on all of its property. A distributorship contract for an indefinite period of time is terminable at the will of either party upon reasonable notice and what constitutes reasonable notice depends upon facts and circumstances of each case. *Rubber Co. v. Distributors*, 253 N.C. 459, 117 S.E. 2d 479. However, where a defendant fails and refuses to make payment for goods furnished under such an agreement, it does not follow that the plaintiff has to give notice before bringing suit on the account or attaching defendant's property if adequate grounds for attachment exist.

[4]    In support of its alleged set-off defendant offered evidence tending to show that when defendant first started business in 1959 an invoice for the first merchandise ordered by defendant from plaintiff was forwarded to an attorney who was a fiduciary of William Wheeler, president of defendant. The attorney forwarded to plaintiff a deposit for the order and wrote that he would guarantee the payment of the balance on the condition the goods described in the invoice or future invoices could be returned for credit at invoice

price less 20%. In April of 1960 the attorney forwarded to plaintiff a check for payment of defendant's outstanding account and wrote:

> "It is understood, however, that in the event of the liquidation, cessation, bankruptcy or receivership of the business, our arrangement whereby you have agreed to take back any or all of the merchandise sold, at cost less twenty percent, remains in full force and effect."

The above correspondence, which was offered by defendant, tends to negate rather than to establish allegations that defendant was entitled to return the inventory of merchandise supplied by plaintiff and receive full credit for its cost plus freight charges. Furthermore, if the letter establishes any right at all to return the merchandise, the right would be that of the attorney fiduciary who sought to guarantee the account and not that of defendant.

[5] We are of the opinion and so hold that the trial court properly nonsuited the counterclaim and set-off. The only issue that then remained was the amount, if any, in which defendant was indebted to plaintiff. Defendant had stipulated to this amount and no controversy remained concerning it. The only thing to be determined by the jury was the credibility of the evidence which included the stipulation. A peremptory instruction was therefore proper.

No error.

BROCK and BRITT, JJ., concur.