CITY OF GASTONIA v. DUKE POWER COMPANY

No. 7327SC457

(Filed 12 September 1973)

1. Contracts § 17— termination time not stated — reasonable time

A contract of indefinite duration may be unilaterally terminated by either party on giving reasonable notice after the contract has been in effect for a reasonable time, taking into account the purpose the parties intended to accomplish.

2. Contracts § 17— 1929 agreement to sell power equipment in annexed area to city — reasonable time — termination by notice to city

A 1929 contract of indefinite duration in which a power company agreed that, upon extension of a city's boundaries, the power company would sell to the city its electric lines and other distribution equipment located within the annexed area was not intended by the parties to last as long as the power company should supply electricity within the vicinity of the city and had been in effect for a reasonable time when the power company notified the city in 1965 that it was terminating the contract; consequently, the power company's notice terminated the contract in 1965 and it was under no obligation to sell the city its electric lines and other equipment in an area annexed by the city in 1968.

APPEAL by plaintiff from *Ervin, Judge,* 17 November 1972 Civil Session of Superior Court held in GASTON County.

The City of Gastonia (City) filed suit on 3 March 1970 against Duke Power Company (Duke) praying that the court grant specific performance of a contract dated 16 January 1929. The original parties to the contract were the City and Southern Public Utilities Company (Southern). Duke succeeded to the rights and obligations of Southern in 1935 when Southern was merged into Duke.

Prior to 1929, the City provided electricity to most electricity consumers living within its boundaries as well as to various consumers living near but outside the city limits. During this time, Southern, under a limited franchise granted by the City in 1906, operated as a public utility within the municipality, selling electricity to large manufacturers located therein.

Under the 1929 contract this arrangement was modified. The City agreed, with several exceptions not presently relevant, to stop supplying electricity to consumers outside the city limits. Southern in turn promised to take over this service and to pur-

chase the City's electric equipment located outside the city limits. The contract also contained the following provisions:

" 'SEVENTH: The parties agree that in case the limits of the City are extended so as to include any portion or all of the lines constituting the system used in providing service for consumers in the immediate vicinity of the City, the Company will sell to the City all lines, poles, transformers, meters and other physical property owned or held by the Company within such extended limits, and the City will pay the Company for same at a fair appraised value; the value shall be agreed upon by the parties and in case they cannot agree, then such value shall be fixed by two arbitrators, one to be selected by each party, and these two to select a third, in case they cannot agree. Immediately upon the extension of the city limits the supplying meters will be transferred to the new city limits.

" 'EIGHTH: Except as provided in Paragraph Seventh, the lines and other property above referred to are and shall continue to be the property of the Company.' "

The contract contained no express provisions as to how long paragraphs seven and eight were to remain in force.

From time to time thereafter the City extended its boundaries, purchasing from Duke electric equipment located within the annexed areas. This process of annexation and purchase occurred in 1952, 1956, 1963 and January of 1965. In each instance neither party referred to the 1929 contract either in the City resolution authorizing the transaction, in the petition before the North Carolina Utilities Commission, or in the sales contract which preceded the actual transfers of electric facilities in each instance. The 1929 contract, however, was discussed during negotiations for the 1965 purchase. Throughout this period it was the general policy of Duke throughout its franchise area in North and South Carolina to sell its electrical distribution facilities located in annexed areas to annexing municipalities, and prior to 1965 such sales had been made in High Point and Shelby, as well as in Gastonia, North Carolina, and in Gaffney, Laurens and Newberry in South Carolina.

In 1965, however, Duke changed its policy. In that year the North Carolina General Assembly enacted Ch. 287, 1965 Session Laws, which, among other matters, prescribed the condi-

tions upon which an electric utility might continue to furnish service in an annexed area. By letter dated 14 October 1965 Duke notified the City that it was terminating the 1929 contract effective the last day of October 1965. The record contains no indication that the City at that time accepted or rejected Duke's decision.

On 29 October 1968, the City, acting pursuant to authority granted in G.S. Ch. 160, Art. 36, Part 3, annexed a small area of land on its western boundary that contained electric facilities owned by Duke. In November 1968, the City notified Duke that it had elected to purchase this equipment under provision of the 1929 contract. Duke, however, refused to agree to the purchase on grounds that the contract had been validly terminated on 31 October 1965 and, even if still in effect, did not cover facilities not in existence in 1929. The City thereupon instituted this action to compel specific performance of paragraph seven.

Jury trial was waived and the case was submitted to the judge upon admissions in the pleadings, stipulations of fact, affidavits and exhibits. Upon these the court entered judgment making findings of fact substantially as above set forth. From the findings of fact, the court made conclusions of law, including among these that the 1929 contract had been in existence a reasonable period of time before Duke gave the City notice of termination on 14 October 1965, that such notice was a reasonable notice, and that the 1929 contract was terminated in 1965 as the result of said notice. From judgment holding that Duke was under no contractual obligation to sell to City its electric lines and facilities in the area annexed by the City in 1968 and denying City specific performance or any other relief in this action, City appealed.

*Garland & Alala by James B. Garland for plaintiff appellant.*

*W. H. Grigg and W. I. Ward, Jr., for defendant appellee.*

PARKER, Judge.

[1] The parties to the 1929 contract which plaintiff now seeks to enforce failed to specify how long the provisions germane to this action should remain in effect. This State follows the generally accepted view that a contract of indefinite duration may be terminated by either party on giving reasonable notice. *Rubber Co. v. Distributors,* 253 N.C. 459, 117 S.E. 2d 479; *Fulghum*

*v. Selma* and *Griffis v. Selma,* 238 N.C. 100, 76 S.E. 2d 368; *Distributing Corp. v. Parts, Inc.,* 7 N. C. App. 483, 173 S.E. 2d 41. To avoid injustice, however, this rule is subject to the qualification that such a contract may not be unilaterally terminated until it has been in effect for a reasonable time, taking into account the purposes the parties intended to accomplish. *Scarborough v. Adams,* 264 N.C. 631, 142 S.E. 2d 608; *Atkinson v. Wilkerson,* 10 N.C. App. 643, 179 S.E. 2d 872; *Hardee's v. Hicks,* 5 N.C. App. 595, 169 S.E. 2d 70. The North Carolina position is succinctly set forth in 2 Strong, N. C. Index 2d, Contracts, § 17, p. 322, as follows:

> "As a general rule, where no time is fixed for the termination of a contract it will continue for a reasonable time, taking into account the purposes that the parties intended to accomplish; and where the duration of the contract cannot be implied from its nature and the circumstances surrounding its execution, the contract is terminable at will by either party on reasonable notice to the other."

[2]    Appellant does not challenge the adequacy of the two-week notice given by Duke on 14 October 1965, nor does appellant claim that it has so relied upon the continued vitality of the contract as to make its termination by Duke unjust or inequitable. Rather, appellant contends that the 36 years that elapsed between the creation and termination of the contract is not a reasonable time, and alternatively, that the parties, by their silence as to duration, actually intended that the contract last as long as Duke should supply electricity within the vicinity of the City. We find both arguments without merit.

In *Fulghum v. Selma, supra,* our Supreme Court construed a contract in some respects similar to the contract presently before us. In that case the Town of Selma agreed in 1946 to sell water to C. B. Fulghum at a point within the city limits. Fulghum then resold the water to inhabitants of nearby Selma Mill Village, conveying the water to the village in water mains built at his expense. The contract did not fix the time of its duration. The Town regularly supplied water under this agreement until 1952, when a Town ordinance raised the price of the water purchased by Fulghum. Fulghum thereupon instituted suit to compel the Town to continue supplying water at the original contract price. The trial court dismissed the action upon defendant's motion for nonsuit, and on appeal our Supreme Court affirmed on the grounds *inter alia,* that either party to a con-

tract silent as to duration may terminate the contract after giving reasonable notice to the other. It would seem that in the present case Duke's right to terminate the 1929 contract is even clearer than that of the Town of Selma to terminate its contract with Fulghum. Not only was the 1929 contract with which we are here concerned in existence for a substantially longer time prior to being terminated than was the case in *Fulghum,* but *Fulghum* dealt with an ongoing contract, the Town supplying an average of 80,000 gallons of water a month under the agreement. In the present case there is little evidence, if any, that Duke ever sold its electric facilities to the City because of the 1929 contract. Rather, the sales of 1952, 1956, 1963 and 1965 reflected general corporate policy, the 1929 contract resurfacing only after that policy had been changed.

The Court in *Fulghum,* however, did not expressly deal with the question of reasonable time, and the appellant here, relying on *Scarborough v. Adams, supra,* argues that in the present case a reasonable time is "an indefinite time extending for the period in which Duke continues to serve consumers in the immediate vicinity of the City of Gastonia." *Scarborough,* however, does not support this inference. The contracts in *Scarborough* reflected the efforts of various political subdivisions of Buncombe County to solve a common waste disposal problem. Each subdivision contracted separately with the Metropolitan Sewerage District of Buncombe County in order to implement the plan. Each contract provided that the agreement was to continue in force only so long as the district sewerage disposal system remained in existence and in operation. The differences between *Scarborough* and the present case are apparent. The *Scarborough* contracts not only contained express provisions as to duration, but also formed the contractual basis for a county-wide sanitary system. The contract between Duke and the City contains no provision as to duration, nor does it involve an attempt to solve a pressing metropolitan problem such that its termination would jeopardize a proposed solution.

Appellant suggests that in determining what is a reasonable time in this case an analogy should be drawn to the sixty-year limit placed on franchises by former G.S. 160-2, citing *Boyce v. Gastonia,* 227 N.C. 139, 41 S.E. 2d 355, as authority that where a franchise granted by a municipality fails to stipulate its duration, the statutory term of sixty years will be read into the contract. The Court in *Boyce* did apply this rule of construction, but it did not hold that the statute was always dis-

positive of the length of a franchise silent as to duration. Further, whatever the precedential weight of *Boyce* for curing problems of indefiniteness as to duration in franchise agreements, the case is not authority for treating other types of municipal contracts as franchises for that purpose. Appellant does not contend that the 1929 contract is a franchise in substance although not in form, and we see no reason to treat it as such.

Alternatively, appellant finds the silence of the contract to be eloquent, stating in its brief that "it would seem that the intention of the parties to an agreement that it should be perpetual and without time limit as to duration could not be more properly expressed than by silence as to any time limit or power of revocation." Thus appellant urges the following rule of law, "that where no limitation is expressed in the agreement, neither party can terminate it without the consent of the other, unless the nature of the contract itself indicates with sufficient clearness that the parties must have intended some other termination." The cases cited in support of this rule, however, contain specific equities, such as reliance or complete performance by one party, that would make termination by the other party unjust. The present case does not present such a situation.

Taking into account the nature and subject matter of the 1929 contract and the purposes which the parties intended to accomplish by its execution, we agree with the trial court's conclusion that the contract had been in existence a reasonable period of time when, more than 36 years after its date and on 14 October 1965, Duke gave notice of termination.

Since we agree with the trial court's further conclusion that the 1929 contract was terminated on 31 October 1965 as result of that notice, we find it unnecessary to pass upon the alternative ground for decision given by the trial judge, i.e., that in any event the 1929 contract related only to such electrical facilities as were in existence when the contract was entered into. The judgment appealed from is

Affirmed.

Chief Judge BROCK and Judge MORRIS concur.