**J. M. SMITH CORP. v. MATTHEWS**

[123 N.C. App. 771 (1996)]

J.M. SMITH CORPORATION D/B/A SMITH DRUG COMPANY, PLAINTIFF v. MILDRED
FIELDS MATTHEWS, INDIVIDUALLY AND D/B/A A-B PHARMACY, MEDICAL ASSOCI-
ATES PHARMACY OF ASHEVILLE LP, MEDICAL ASSOCIATES OF AMERICA,
INC., DEFENDANTS

No. COA95-1159

(Filed 17 September 1996)

1. **Courts § 145 (NCI4th)—conflict of laws—security agree-
ment specifying S.C. law—open account not specified—
resolved under N.C. law**

The resolution of issues involving an open account for
pharmaceutical supplies was controlled by North Carolina law
where the parties had established an account and entered into a
security agreement pursuant to the account. Construed under
South Carolina law, as the security agreement required, the obli-
gation arose under the open account and not under the security
agreement; there is nothing in the record indicating any agree-
ment as to the controlling law on the open account and the reso-
lution of the action on the account is controlled by North
Carolina law.

**Am Jur 2d, Conflict of Laws § 82.**

2. **Accounts and Accounts Stated § 14 (NCI4th)— open
account—pharmaceutical supply—pharmacy sold—pharma-
ceuticals supplied under old account**

Summary judgment should have been granted for defendant
in an action arising from the provision of pharmaceutical supplies
by plaintiff to a pharmacy owned by defendant Matthews where
the parties had established an account; defendant or her employ-
ees placed orders with plaintiff on a daily basis and made weekly
payments for the outstanding balance to plaintiff's sales repre-
sentative; defendant Matthews sold the pharmacy and remained
an employee of the store; defendant's evidence showed that plain-
tiff's sales representative went to the pharmacy and was informed
of the sale and that arrangements would have to be made through
the store's new owners, the sales representative spoke with the
representative of the new owners and told defendant that the new
owners would be setting up an account with a different supplier
but would continue ordering from plaintiff until the new account
was established, and the sales representative thereafter never
looked to defendant for payment; plaintiff's evidence was that

plaintiff failed to establish a new account for the new owners but delivered pharmaceutical products and continued to charge to the old open account; and a balance of $20,170.79 was created which has not been paid. Plaintiff had reasonable notice and was imputed with the knowledge of its agent, the sales representative, that it could no longer charge pharmaceuticals to defendant's open account. Even if defendant did not give reasonable notice that she was terminating her open account, plaintiff was notified through its agent that defendant had sold or would be selling the pharmacy and had a duty to mitigate damages, but continued to ship pharmaceuticals and charge defendant's account.

**Am Jur 2d, Accounts and Accounting §§ 4-7.**

Appeal by defendant from order entered 21 June 1995 by Judge James R. Strickland in Buncombe County Superior Court. Heard in the Court of Appeals 23 May 1996.

*McGuire, Wood & Bissette, P.A., by T. Douglas Wilson, Jr., for plaintiff appellee.*

*Devere Lentz & Associates, by John M. Olesiuk, for defendant appellant.*

SMITH, Judge.

Defendant Matthews owned A-B Pharmacy in Asheville, North Carolina. In the course of operating A-B Pharmacy, defendant established an account to purchase pharmaceutical supplies from plaintiff. Pursuant to such account, the parties entered into a security agreement granting plaintiff a security interest in defendant's inventory, accounts receivable, furniture, fixtures and equipment and in all proceeds from the sale of any of the collateral named in the agreement. The security agreement further provided that it could not be *modified or amended except* in writing by the parties. The account that plaintiff and defendant set up was otherwise an open account. Defendant, or one of her employees placed orders with plaintiff on a daily basis. It was the parties' custom and practice for defendant to make weekly payments for the outstanding balance to plaintiff's sales representative. This custom of frequent orders and weekly payments continued for more than three-and-one-half years while defendant owned the pharmacy. Additional facts necessary to the disposition of this case are discussed later in this opinion.

**J. M. SMITH CORP. v. MATTHEWS**

[123 N.C. App. 771 (1996)]

On 13 February 1995, plaintiff filed this action against Medical Associates and defendant Matthews. Plaintiff and defendant Matthews both moved for summary judgment with supporting affidavits. On 21 June 1995, the trial judge granted plaintiff's motion and entered judgment against defendant Matthews in the amount of $20,170.79, plus pre- and post-judgment interest. The trial court further denied defendant Matthews' motion for summary judgment. Defendant Matthews subsequently voluntarily dismissed her cross claims against codefendants in this action. From the summary judgment order, defendant Matthews appeals.

A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. In passing upon a motion for summary judgment, the court must view the evidence presented by both parties in the light most favorable to the nonmoving party. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665-66, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). After reviewing the forecast of evidence of record, we disagree with the trial court and determine that summary judgment should have been granted in favor of defendant.

[1] As a preliminary matter, we note that the security agreement between the parties contains the following provision: "6. Governing Law. This agreement is being executed and delivered in the State of South Carolina and shall be construed in accordance with and governed by the laws of said State." When the security agreement is construed in accordance with South Carolina law, it is obvious that the obligation to pay for the pharmaceutical supplies arose under the open account between the parties and not under the security agreement. "The debt was not created by the security agreement nor [is] its validity dependent on the existence or enforceability of the security agreement." *Hyload, Inc. v. Pre-Engineered Products, Inc.*, 417 S.E.2d 622, 625 (S.C. Ct. App. 1992). "This [is] not an action to enforce rights in collateral, but an action for a money judgment against the debtor." *Id.* Though the security agreement is governed by South Carolina law, there is nothing in the record indicating any agreement as to the controlling law on the open account. Where the transaction bears a reasonable relation to more than one state, the U.C.C. permits the parties to agree with respect to which state's law shall govern their rights and duties. *Wohlfahrt v. Schneider*, 82 N.C. App. 69, 74,

345 S.E.2d 448, 451 (1986); N.C. Gen. Stat. § 25-1-105(1) (1995). South Carolina has also adopted the U.C.C. *Draffin v. Chrysler Motors Co.*, 166 S.E.2d 305, 306 n.1 (S.C. 1969). However, "[w]here there is no agreement as to the governing law, the Act is applicable to any transaction having an 'appropriate' relation to any state which enacts it. Of course, the Act applies to any transaction which takes place in its entirety in a state which has enacted the Act." *See* N.C. Gen. Stat. § 25-1-105 Amended Official Comment. Our Courts have interpreted "appropriate relation" to mean "most significant relationship." *Boudreau v. Baughman*, 322 N.C. 331, 338, 368 S.E.2d 849, 855 (1988). Therefore, because the pharmaceutical supplies were ordered in North Carolina, delivered in North Carolina, paid for in North Carolina and sold in North Carolina, we hold that the transaction bears an appropriate relation to North Carolina. Accordingly, resolution of the substantive issues in this case in the action on the account is controlled by North Carolina law.

[2] "[North Carolina] follows the generally accepted view that a contract of indefinite duration may be terminated by either party on giving reasonable notice." *City of Gastonia v. Duke Power Co.*, 19 N.C. App. 315, 317, 199 S.E.2d 27, 29 (citations omitted), *cert. denied*, 284 N.C. 252, 200 S.E.2d 652 (1973). "To avoid injustice, however, this rule is subject to the qualification that such a contract may not be unilaterally terminated until it has been in effect for a reasonable time, taking into account the purposes the parties intended to accomplish." *Id.* at 318, 199 S.E.2d at 29-30. Succinctly stated, the North Carolina rule is as follows:

> "As a general rule, where no time is fixed for the termination of a contract it will continue for a reasonable time, taking into account the purposes that the parties intended to accomplish; and where the duration of the contract cannot be implied from its nature and the circumstances surrounding its execution, the contract is terminable at will by either party on reasonable notice to the other."

*Id.* at 318, 199 S.E.2d at 30 (citation omitted).

The open account established between the parties appears to be the result of an oral agreement. There is no evidence that any time limitation was put on the account by the parties. The account was in existence for over three-and-one-half years while defendant owned A-B Pharmacy. An ordinary open account results where the parties intend for individual transactions to be considered as a connected

**J. M. SMITH CORP. v. MATTHEWS**

[123 N.C. App. 771 (1996)]

series rather than as independent of each other, and a balance is kept by adjustment of debits and credits and further dealings between the parties are contemplated. *Electric Service, Inc. v. Sherrod,* 293 N.C. 498, 503, 238 S.E.2d 607, 611 (1977) (citing *McKinnie Bros. v. Wester,* 188 N.C. 514, 125 S.E. 1 (1924)).

From the record it is obvious that defendant *terminated* her open account to purchase pharmaceuticals and that she *revoked* any authority plaintiff had to ship pharmaceuticals to the A-B pharmacy and bill her account. "A principal is chargeable with and bound by the knowledge of or notice to his agent, received while the agent is acting as such within the scope of his authority and in reference to which his authority extends." *Roberts v. Memorial Park,* 281 N.C. 48, 60, 187 S.E.2d 721, 728 (1972) (citing *Norburn v. Mackie,* 262 N.C. 16, 136 S.E.2d 279 (1964)). Plaintiff was reasonably notified and bound by the knowledge of its agent McElreath that it did not have the authority to take orders from the new owners and charge them to defendant Matthews' open account.

Defendant Matthews' evidence shows that, on or about 1 March 1993, she sold the A-B Pharmacy to Medical Associates and she remained an employee of the store thereafter. In early March of 1993 plaintiff's sales representative, McElreath, went to the A-B Pharmacy for his weekly visit, and defendant informed McElreath that she had sold her business to Medical Associates. She further advised McElreath that, if plaintiff wished to continue providing pharmaceuticals to A-B Pharmacy, arrangements had to be made through the store's new owners. McElreath spoke with Cummins, the representative of the new owners, Medical Associates, and then told defendant that Medical Associates would be setting up an account with a different pharmaceutical supplier, but Medical Associates would continue ordering from plaintiff until the new account was established. Thereafter, McElreath never looked to defendant for payment as had been the practice on a weekly basis for the previous three-and-one-half years prior to the conversation regarding defendant's sale of the pharmacy. Mary Jane Jarrett was present during the conversations with McElreath. She was an employee of Medical Associates after 1 March 1993. She placed orders for pharmaceuticals on a daily basis with plaintiff and signed for the drugs when they were delivered to the store. After 1 March 1993 defendant became an employee of the A-B Pharmacy and had no authority to issue or to sign checks on behalf of the new owners Medical Associates.

Plaintiff's evidence shows that, on or about 1 March 1993 during McElreath's normal sales call to the A-B Pharmacy, defendant informed McElreath that she was selling the pharmacy to Medical Associates, but she would remain as an employee of the pharmacy. During McElreath's visit, defendant introduced McElreath to Cummins the representative of Medical Associates. Cummins advised McElreath that Medical Associates had a contract with another national competitor and would not be buying any products from plaintiff. Thereafter, plaintiff failed to establish a new account with Medical Associates. During March and April 1993, plaintiff delivered pharmaceutical products to Medical Associates and continued to charge the pharmaceuticals to the A-B Pharmacy open account under which it had sold pharmaceuticals to defendant when she owned the store. A balance of $20,170.79 was created, and neither defendant nor Medical Associates have paid this amount to plaintiff.

Taking this forecast of evidence in the light most favorable to defendant, we hold that plaintiff had reasonable notice and was imputed with the knowledge of its agent McElreath that it could no longer charge pharmaceuticals to defendant's open account. Therefore, defendant is entitled to judgment as a matter of law.

> "The rule in North Carolina is that an injured plaintiff, whether his case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If he fails to do so, for any party of the loss incident to such failure, *no recovery can be had.* This rule is known as the doctrine of avoidable consequences or the duty to minimize damages. Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable."

*Radford v. Norris,* 63 N.C. App. 501, 502, 305 S.E.2d 64, 65 (1983) (citations omitted) (emphasis added), *appeal after remanded,* 74 N.C. App. 87, 327 S.E.2d 620, *disc. review denied,* 314 N.C. 117, 332 S.E.2d 483 (1985) (Appeal after remand not relevant to this case.). Thus, even if defendant did not give reasonable notice that she was terminating her open account with plaintiff, plaintiff, through its agent, was notified that defendant Matthews had either sold, or would be selling A-B Pharmacy to Medical Associates and had a duty to mitigate its damages. However, plaintiff continued to ship pharmaceuticals to A-B Pharmacy and to charge defendant's account in the amount of $20,170.79.

We hold that plaintiff, as a matter of law, had reasonable notice that their agreement to charge pharmaceuticals to defendant's open account was terminated, and that defendant is entitled to judgment as a matter of law. The order of the trial court granting summary judgment in plaintiff's favor and denying defendant Matthews' motion for summary judgment is reversed and the case is remanded for entry of summary judgment for defendant Matthews.

Judges EAGLES and WYNN concur.