THE GENERAL TIRE & RUBBER COMPANY, A CORPORATION v. DISTRIBUTORS, INC., A CORPORATION.

(Filed 16 December, 1959.)

**1. Pleadings § 15—**

Upon demurrer, the allegations of the pleading are to be taken as true and liberally construed with a view to substantial justice between the parties. G.S. 1-151.

**2. Same—**

A pleading will not be rejected upon demurrer unless it is wholly insufficient and if the pleading in any part alleges facts sufficient to constitute a maintainable action the demurrer must be overruled, nor does a demurrer present whether a particular allegation should be stricken.

**3. Pleadings § 10—**

In an action on contract, the defendant may, under G.S. 1-137 (1), set up as a counterclaim a cause of action arising out of the contract sued on and may, under G.S. 1-137 (2), also set up the breach of an entirely different and distinct contract existing at the commencement of the action.

**4. Same: Claim and Delivery § 2—**

In plaintiff's action to recover certain goods sold under consignment, with ancillary proceedings in claim and delivery, defendant may set up as a counterclaim a separate contract existing at the time under which defendant was given exclusive right to act as distributor for the goods of

plaintiff until a specified future date, and that plaintiff's seizure of the goods was in violation of the distributor agreement and was wrongful.

**5. Pleadings § 13—**

Where an answer setting up a counterclaim is served on plaintiff, plaintiff must reply thereto. G.S. 1-140.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Sharp, Special J.,* May 4, 1959 Special Term, of MECKLENBURG.

Plaintiff's action is to recover specific personal property, to wit, certain cartons of Bolta-Floor Vinyl Flooring described in schedule attached to complaint as Exhibit A, in possession of defendant as plaintiff's consignee under terms of "Warehouse Agreement" dated July 30, 1956, "or so much thereof as is available," and to recover judgment for such portion thereof "as has been disposed of and is not now recoverable by this action."

Under the "Warehouse Agreement," a copy of which is attached to complaint as Exhibit B, plaintiff retained title to the merchandise consigned to defendant as "Warehouseman" until disposed of by defendant in accordance with the terms thereof. The "Warehouse Agreement" provided, *inter alia,* for the withdrawal of merchandise "(b) On order of Distributors, Inc. (defendant), in its capacity as Distributor, within the limit established by the Credit Department of the Company (plaintiff) provided said merchandise is withdrawn for Warehouseman's (defendant's) use in the ordinary course of business." It contains provisions as to reports, invoices, payments, etc., in respect of all merchandise stored in or withdrawn from "the Warehouse."

In respect of "TERMINATION," the "Warehouse Agreement" provides: "Breach of this agreement by either party will be considered just cause for immediate termination. This agreement may also be canceled by either party at any time upon three days' written notice. In either event, Warehouseman agrees to deliver immediately thereafter to location designated by Company and without expense or commission of any nature to Company, all consigned stock in his possession."

Plaintiff alleged that, notwithstanding its demand therefor, defendant refused to deliver to plaintiff the consigned merchandise, and that plaintiff was the owner and entitled to the immediate possession thereof.

The action and ancillary proceedings in claim and delivery were commenced March 24, 1958. Upon failure of defendant to retain pos-

session *pendente lite* by filing replevy bond, G.S. 1-478, plaintiff, on March 28, 1958, obtained possession of all except sixty-four cartons "not found."

Defendant answered. It admitted plaintiff's ownership of the personal property seized in claim and delivery proceedings, but denied that plaintiff was entitled to the immediate possession thereof.

Plaintiff demurred to the portion of defendant's answer entitled "FOR FURTHER ANSWER AND DEFENSE TO PLAINTIFF'S COMPLAINT, AND IN BAR OF ITS RIGHT TO RECOVER HEREUNDER, AND AS A COUNTERCLAIM." (Note: Prior to the filing of said demurrer, the court, allowing in part plaintiff's motion, had stricken all or part of twenty-three of the thirty paragraphs of defendant's said pleading. Neither party excepted to this order.)

As grounds for demurrer, plaintiff asserted: 1. In any event, defendant cannot recover from plaintiff more than the value of the merchandise obtained by plaintiff by virtue of plaintiff's undertaking in claim and delivery proceedings. 2. Defendant cannot set up by counterclaim a cause of action for alleged breach of contract occurring July 2, 1958, more than three months after this action was commenced. 3. Defendant's alleged counterclaim constitutes a misjoinder of causes of action in that the matters alleged therein "are foreign to the subject action in time and substance . . ."

This is the gist of defendant's allegations:

In July, 1956, plaintiff and defendant agreed, orally, that from July 30, 1956, defendant was to be the sole and exclusive distributor of plaintiff's products in North and South Carolina. Defendant agreed (1) to "give up" the competitive line it had been handling, and (2) to promote, in particulars stated, at defendant's expense, the sale of plaintiff's products in the Carolinas. It was agreed that, to avoid "encumbering" defendant's working capital, plaintiff would make available to defendant an adequate stock of its merchandise; and the "Warehouse Agreement" was executed as a means of implementing this part of their agreement. It was contemplated the defendant would remain the distributor of plaintiff's products "for many years in the future," but no period of duration was specified. However, on July 31, 1957, plaintiff agreed, in writing, that the "Warehouse Agreement" would continue in effect "until at least July 31, 1960."

Although defendant performed all of its obligations "right up until the time of this action," plaintiff, during the latter part of 1957, "knowingly, wilfully and wantonly, set out upon a studied plan to deprive defendant of the benefits of said Distributorship Agreement and to damage the defendant through illegally canceling the defendant's appointment as sole and exclusive distributor for plaintiff corporation

in North and South Carolina." On March 6, 1958, plaintiff, by Western Union telegram, "purported to cancel WAREHOUSE AGREEMENT, and did demand of defendant that it deliver unto plaintiff's agent all inventory being stored by defendant for its use as plaintiff's distributor." Thereafter, on March 24, 1958, plaintiff instituted this action and "thus illegally seize(d) Inventory lawfully in the possession of the defendant."

After this action was commenced, to wit, on May 1, 1958, plaintiff and defendant entered into "another agreement." Plaintiff then agreed "that credit arrangements would again be extended to defendant corporation, which the parties agreed were necessary in order for defendant to continue functioning as a Distributorship, if the defendant corporation would cause its President and Vice-President to execute personal guaranties up to the maximum amount of credit plaintiff would extend defendant, to protect plaintiff corporation from any possible loss"; and, "In consideration of plaintiff's promise to honor its distributorship agreement and to resume its warehousing arrangement with defendant, as aforesaid, defendant agreed that it would pay to the plaintiff approximately $5,500 then currently due for goods sold on open account." Thereafter, on May 26, 1958, in compliance with plaintiff's demand, defendant's President and Vice-President, and their respective wives, executed and furnished to plaintiff such good and adequate personal guaranties; and on June 4, 1958, defendant "paid plaintiff corporation $1,500 of the aforementioned Open Account fund."

Notwithstanding defendant complied with all of plaintiff's requirements under said agreement of May 1, 1958, "plaintiff, on July 2, 1958, did notify the defendant, in writing, of its refusal to extend any credit whatsoever to defendant, and of its refusal to make available to the defendant any warehouse stock," all in breach of their agreement and in "wilful, wanton and callous disregard of the defendant's rights and well being under the terms of the agreement between the parties."

On account of plaintiff's breach of contract as alleged, defendant is entitled to recover $50,000.00 as compensatory damages and $100,-000.00 as punitive damages.

The court entered judgment sustaining plaintiff's said demurrer. Defendant excepted and appealed.

*Orr, Osborne & Hubbard for plaintiff, appellee.*
*Ralph C. Clontz, Jr., for defendant, appellant.*

BOBBITT, J.   The demurrer does not challenge defendant's counterclaim on the ground that it fails to state facts sufficient to constitute

a cause of action against plaintiff. Nor does it challenge defendant's counterclaim on the ground that it united, but did not separately state, two causes of action. G.S. 1-123; *Heath v. Kirkman*, 240 N.C. 303, 306, 82 S.E. 2d 104. The phrase "misjoinder of causes of action," as used in the demurrer, refers to plaintiff's contention that "the matters alleged in defendant's counterclaim are foreign to the subject action in time and substance . . ."

Plaintiff's contention is that the cause of action alleged by defendant is for the alleged breach on July 2, 1958, of a contract entered into between plaintiff and defendant on May 1, 1958, all occurring subsequent to the commencement of this action; and *upon this premise,* plaintiff asserts that the counterclaim is not permissible under G.S. 1-137(2).

In determining whether the counterclaim is permissible under G.S. 1-137, we accept as true the facts alleged by defendant. *Burns v. Oil Co.,* 246 N.C. 266, 98 S.E. 2d 339. "In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties." G.S. 1-151.

"A pleading must be fatally and wholly defective before it will be rejected as insufficient." *Guerry v. Trust Co.,* 234 N.C. 644, 646, 68 S.E. 2d 272, and cases cited. Plaintiff's demurrer is directed to defendant's said pleading *in its entirety,* not to specific portions thereof. Whether particular allegations thereof should be stricken is not presented. Thus, if defendant's said pleading includes a permissible counterclaim, it was error to sustain plaintiff's demurrer.

Under G.S. 1-137(1), it is permissible to allege as a counterclaim "A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action."

*In addition* to counterclaims permissible under G.S. 1-137(1), G.S. 1-137(2) permits a defendant to allege as a counterclaim in an action arising on contract, "any other cause of action arising also on contract, and existing at the commencement of the action." Thus, G.S. 1-137(2) is applicable "where, in an action on a contract, the breach of an entirely different and distinct contract is set up by defendant." *Smith v. French,* 141 N.C. 1, 7, 53 S.E. 435. A counterclaim permissible under G.S. 1-137(2) need not relate to the contract or transaction set forth in the complaint "as the foundation of the plaintiff's claim or (that it be) connected with the subject of the action." *Credit Corp. v. Motors,* 243 N.C. 326, 334, 90 S.E. 2d 886.

The purpose and intent of G.S. 1-137(1) "is to permit the trial in one action of all causes of action arising out of any one contract or

transaction." *Hancammon v. Carr,* 229 N.C. 52, 47 S.E. 2d 614; *Amusement Co. v. Tarkington,* 247 N.C. 444, 101 S.E. 2d 398. While it authorizes "the litigation of all questions arising out of any one transaction, or series of transactions concerning the same subject matter, in one and the same action," and so does not permit multifariousness, "it must appear that there is but one subject of controversy." *Hancammon v. Carr, supra,* and cases cited. "The cross action must have such relation to the plaintiffs' claim that the adjustment of both is necessary to a full and final determination of the controversy. *Schnepp v. Richardson,* 222 N.C. 228, 22 S.E. 2d 555. This means that it must be so interwoven in plaintiffs' cause of action that a full and complete story as to the one cannot be told without relating the essential facts as to the other." *Hancammon v. Carr, supra,* where *Barnhill, J.* (later C.J.), quotes with approval definitions of the phrases "connected with" and "subject of the action." Also, see *Garrett v. Rose,* 236 N.C. 299, 72 S.E. 2d 843.

When considered in the light most favorable to it, defendant alleged: That the "Warehouse Agreement" was an integral part of a distributorship agreement entered into between plaintiff and defendant in July, 1956, which, by agreement of July 31, 1957, was extended until July 31, 1960; that defendant had fully performed its obligations; and that plaintiff breached their agreement on March 6, 1958, by then demanding, and thereafter by seizing under claim and delivery proceedings herein, all inventory then in defendant's possession, thus depriving defendant of its distributorship. Allegations of defendant to this effect suffice to allege a breach by plaintiff of its contract with defendant that occurred prior to the commencement of this action. Thus, *the premise* upon which plaintiff bases its aforesaid contention is untenable.

True, plaintiff's action is based solely on the "Warehouse Agreement" and defendant's failure, upon demand, to deliver to plaintiff the consigned merchandise. Even so, if the facts are as alleged by defendant, plaintiff may not deprive defendant of its right to recover by counterclaim for plaintiff's breach of contract simply by treating the "Warehouse Agreement" *as if* it were the entire contract between the parties.

The subject of plaintiff's action is its alleged right to the immediate possession of the consigned merchandise. (Plaintiff seeks to recover the consigned merchandise, "or so much thereof as is available," and to recover judgment for such portion thereof "as has been disposed of and is not now recoverable by this action.") It did not have such right, notwithstanding title thereto was in plaintiff until disposed of in accordance with the provisions of the "Warehouse Agreement," if

it was agreed that the "Warehouse Agreement" and the distributorship were to continue until July 31, 1960. Hence, defendant's counterclaim relates to a controversy directly "connected with the subject of plaintiff's action." It is "so interwoven in (plaintiff's) cause of action that a full and complete story as to the one cannot be told without relating the essential facts as to the others." Indeed, if it were determined in this action that plaintiff is entitled to the immediate possession of the consigned merchandise, it would appear that such finding, and a judgment predicated thereon, would preclude defendant from thereafter asserting in an independent action the alleged contract and breach thereof now asserted as the basis of its counterclaim.

Our conclusion is that defendant has alleged a counterclaim permissible under both G.S. 1-137(1) and G.S. 1-137(2). Hence, the court erred in sustaining plaintiff's demurrer.

Since defendant has alleged a cause of action permissible as a counterclaim, it is unnecessary to consider in detail defendant's allegations as to what occurred subsequent to the commencement of this action. Suffice to say, such allegations are not inconsistent with defendant's allegations to the effect that plaintiff had breached its contract with defendant prior to the commencement of this action. Too, without determining whether these allegations should have been separately stated as a second cause of action, a question not presented by this appeal, these allegations are germane to the "one subject of controversy," namely, the contractual relations between plaintiff and defendant with reference to the "Warehouse Agreement" and the distributorship agreement and whether plaintiff or defendant breached their contractual obligations.

It appears that the answer, inclusive of the counterclaim, were served on plaintiff. Hence, plaintiff will reply thereto. G.S. 1-140.

Reversed.

Higgins, J., took no part in the consideration or decision of this case.