MYRTLE BURTON v. A. L. DIXON, EXECUTOR OF THE WILL OF C. P. WILSON, ORIGINAL DEFENDANT, AND K. D. BURTON, ADDITIONAL DEFENDANT.

(Filed 22 May 1963.)

1. Conspiracy § 1—

   If two or more individuals agree to do an unlawful act or to do a lawful act in an unlawful manner, and an overt act which causes damage is committed by any one or more of them in furtherance of the common design, the party injured may maintain an action against the conspirators jointly or severally.

2. Conspiracy § 2—

   A pleading alleging that husband and wife, acting together, invited the wife's father to live with them, and acted as co-partners in a joint venture

BURTON *v.* DIXON.

to gain control of his property and convert it to their own use, that the husband persuaded his father-in-law to sign a power of attorney which the husband used to sell merchantable timber, and that the parties converted the proceeds of the sale to their own use, etc., *is held* sufficient to state a cause of action for civil conspiracy against the husband and wife, notwithstanding that it does not employ the words "conspiracy" or "conspirators."

**3. Same;  Husband and Wife § 2—**

Under both Virginia and North Carolina law husband and wife may conspire together, and an action for civil conspiracy may be maintained against the husband or wife alone. Virginia Code § 55-36; G.S. 52-10; G.S. 52-15.

**4. Pleadings § 8—**

In a daughter's action against the estate of her father to recover for personal services rendered her father prior to his death, the personal representative's counterclaim alleging that the daughter and her husband conspired to obtain control of her father's property, and pursuant thereto the husband procured power of attorney under which he sold merchantable timber and converted the proceeds to their use, *held* to meet the requirments of G.S. 1-137 that a several judgment must be permissible on a counterclaim.

**5. Same—**

In an action *ex contractu* defendant may set up a counterclaim in tort if it arises out of the same transaction or is connected with the subject of the action.

**6. Same;  Executors and Administrators § 24a—**

In a daughter's action against her father's estate to recover for personal services rendered her father, the defendant executor may set up a counterclaim against her for civil conspiracy between her and her husband pursuant to which the husband obtained a power of attorney and sold merchantable timber belonging to her father and converted the proceeds to their own use, since the counterclaim is connected with the subject of the plaintiff's action and is so related thereto that adjustment of both is necessary in a full and final determination of the controversy.

**7. Judgments § 1;  Parties § 8—**

The court may not order a nonresident over whom it has no jurisdiction to be joined as a party, even though such nonresident be a proper or even a necessary party, since jurisdiction of an action *in personam* can be acquired only by personal service, acceptance of service, or general appearance.

**8. Pleadings § 18—**

Where, in a daughter's action against the estate of her father to recover for personal services rendered him, defendant files a counterclaim alleging that the daughter and her husband, pursuant to a conspiracy, acquired control of testate's property and converted it to their own use, the joinder of the husband would not constitute a misjoinder of parties and

causes, since the presence of the husband is necessary to a complete determination of the controversy.

APPEAL by plaintiff from *Hobgood, J.,* in Chambers at LOUISBURG, North Carolina, January 5, 1963. From Person.

Action against defendant executor to recover for services rendered defendant's testate and for expenses incurred in his behalf.

The substance of the complaint is: Plaintiff and her husband, K. D. Burton, reside in Virginia. C. P. Wilson, plaintiff's father, came to live with her in 1956. He was old and infirm, stated that he expected to pay plaintiff for the services, care and support rendered him and for expenses incurred on his behalf, and promised to make provision in his will to compensate her. He continued to live with plaintiff until his death in 1961. Plaintiff by personal care and at her expense provided for all his needs, including hospital, medical and funeral expenses. He did not make provision in his will to compensate plaintiff. She is entitled to recover $8,999.35.

Defendant executor, answering, denies the material allegations of the complaint and sets up a counterclaim, which is summarized in part and verbatim in part as follows (numbering ours):

(1). Plaintiff and her husband invited C. P. Wilson to live in their home "to gain control of his assets and convert the same to their own use." And "to this end . . . the plaintiff and her husband planned together, acted as co-partners and as husband and wife in a joint venture."

(2). ". . . (P)laintiff and her husband persuaded C. P. Wilson to sign . . . a legal instrument purporting to give K. D. Burton broad and general power of attorney over the property of C. P. Wilson, including the right to dispose of any timber which C. P. Wilson owned."

(3). ". . . (S)ometime in 1958 K. D. Burton disposed of and received the proceeds from the sale of all merchantable timber from the farm of C. P. Wilson. . . . (I)n selling this timber and in obtaining the power of attorney . . . K. D. Burton was acting with the knowledge, consent, approval and encouragement of his wife. . . ." It "was a joint venture in which plaintiff and her husband acted as co-partners. . . . (T)he amount of money . . . received from the sale of timber was fraudulently misapplied and converted to the use of the plaintiff and her husband. . . . (T)here has never been an accounting for the proceeds from the sale of said timber. . . ." The value of the timber converted is $6800.

(4) By virtue of the power of attorney, K. D. Burton in 1957, 1958, 1959 and 1960 collected rents due C. P. Wilson from the farm in the

total amount of $4,412.22, and plaintiff and K. D. Burton, acting as "co-partners and joint venturers," fraudulently converted these rents to their own use, and have never accounted therefor. An accounting is demanded.

Defendant executor prays that K. D. Burton be made a party defendant and that he be served with process, and for judgment against plaintiff and K. D. Burton in the amount of $11,212.22.

Plaintiff demurs to the counterclaim on the grounds:

"(4). That in the counterclaim there is a misjoinder of causes and parties."

"(5). That the purported counterclaim is a defective statement of any cause of action."

(The first three grounds are not relied on in Supreme Court, are deemed abandoned, and are omitted here.)

The judge below overruled the demurrer, and plaintiff appealed. Plaintiff also petitioned for certiorari and the writ was allowed.

*Everett, Everett & Everett and T. Jule Warren for plaintiff.*
*R. B. Dawes, Sr., and R. B. Dawes, Jr., for Original Defendant.*

MOORE, J. There are two questions for decision: (1) Does the counterclaim state a cause of action? (2) If so, is there a misjoinder of parties and causes?

Accepting the factual allegations of the counterclaim as true and construing them liberally, as we must in passing upon the demurrer (*Rubber Co. v. Distributors, Inc.*, 251 N.C. 406, 410, 111 S.E. 2d 614), we are of the opinion that the facts alleged are sufficient to constitute a cause of action for damages arising from a conspiracy to take possession of C. P. Wilson's property and convert it to the use of plaintiff and her husband.

A conspiracy is generally defined as an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful manner. *Muse v. Morrison*, 234 N.C. 195, 66 S.E. 2d 783. A civil action for conspiracy is an action for damages resulting from acts committed by one or more of the conspirators pursuant to the formed conspiracy, rather than the conspiracy itself. The combination or conspiracy may be of little consequence except as bearing upon rules of evidence or the persons liable. If a conspiracy is formed and an overt act, causing damage, is committed by any one or more of the conspirators in furtherance of the conspiracy, all of the conspirators are liable. All may be joined as parties defendant in an action for damages

caused by the wrongful act, but it is not necessary that all be joined; an action may be maintained against only one. The liability of the conspirators is joint and several. *Burns v. Gulf Oil Corporation,* 246 N.C. 266, 98 S.E. 2d 339; *Muse v. Morrison, supra.*

The counterclaim does not refer to plaintiff and her husband as conspirators; it designates them as "co-partners" and "joint venturers." However, it is not the titular designation that controls; the nature of the cause of action is determined by the facts alleged. It is alleged that plaintiff and her husband, acting together, invited C. P. Wilson to live with them for the purpose of gaining control of his assets and converting them to their own use, they persuaded C. P. Wilson to execute to the husband a general power of attorney and by means thereof sold timber and collected rents belonging to C. P. Wilson, and they converted the proceeds of the timber and rents to their own use. This is a sufficient statement of a cause of action for conspiracy, and according to the facts pleaded both conspirators committed acts pursuant to the conspiracy.

"Generally speaking, any person who is capable in law of being sued and who takes part in a conspiracy may be held civilly liable as a conspirator. . . . (A)t common law an action for conspiracy cannot be maintained against a husband and wife alone, since they are considered to be one person. . . . Since the gist of the modern action, however, is damages, and not the conspiracy, an action for conspiracy may now be maintained against a husband and wife alone." 11 Am. Jur., Conspiracy, s. 47, pp. 579-580; *Jones v. Monson,* 119 N.W. 179 (Wis. 1909). It is the law in Virginia that a married woman may "sue and be sued in the same manner and with the same consequences as if she were unmarried." Code Va., s. 55-36; *Furey v. Furey,* 71 S.E. 2d 191 (1952). The same is true in North Carolina. G.S. 52-10; G.S. 52-15.

This brings us to the question whether the defendant executor may assert his action for conspiracy as a counterclaim in plaintiff's action. It may be maintained as a counterclaim if it is a cause of action in favor of defendant and against plaintiff and in such action a several judgment may be had between them, and if the cause of action (counterclaim) arose out of the contract or transaction set forth in the complaint as the foundation for plaintiff's claim or is connected with the subject of the action. G.S. 1-137.

"A several judgment may be had on a counterclaim within the purview of the statute when judgment may be rendered for the plaintiff, or all of the plaintiffs, if more than one, or for the defendants, if more than one, accordingly as the court may decide in favor of the one side or the other." *Garrett v. Rose,* 236 N.C. 299, 305, 72 S.E. 2d 843; *Lum-*

*ber Co. v. Wallace,* 93 N.C. 22. It is apparent that the counterclaim in the instant action meets this test. On the record the husband, K. D. Burton, is not presently a party. But, as stated above, conspirators are jointly and severally liable. The test is met either with or without the husband as a party.

As to whether the cause of action stated in the counterclaim arose out of the transaction set forth in the complaint or is connected with the subject of the action, the following discussion in *Hancommon v. Carr,* 229 N.C. 52, 47 S.E. 2d 614, sets out the guiding principles:

"As the purpose of the two sections [G.S. 1-123 (1), G.S. 1-137 (1)] is to authorize the litigation of all questions arising out of any one transaction, or series of transactions concerning the same subject matter, in one and the same action, and not to permit multifariousness, it must appear that there is but one subject of controversy. (Citing authorities)

"While the statute is designed 'to enable parties litigant to settle well-nigh any and every phase of a given controversy in one and the same action,' *Smith v. French, supra* (141 N.C. 1) ; *Sewing Machine Co. v. Burger,* 181 N.C. 241, 107 S.E. 14, that a connected story may be told is not alone sufficient. *Pressley v. Tea Co., supra* (226 N.C. 518, 39 S.E. 2d 382). Nor is mere historical sequence— 'one thing led to another' order of occurrences—all that is required. *Finance Corp v. Lane,* 221 N.C. 189, 19 S.E. (2d), 849.
. . .

"The cross action must have such relation to the plaintiffs' claim that the adjustment of both is necessary to a full and final determination of the controversy. *Schnepp v. Richardson,* 222 N.C. 228, 22 S.E. (2d), 555. This means that it must be so interwoven in plaintiffs' cause of action that a full and complete story as to the one cannot be told without relating the essential facts as to the other.

" 'The "subject of the action" means, in this connection, the thing in respect to which the plaintiff's right of action is asserted, . . . .' To be connected with the subject of action the 'connection of the case asserted in the counterclaim and the subject of the action must be immediate and direct, and presumably contemplated by the parties.' *Phillips, Code Pleading,* 2d ed., sec. 377, p. 423.

" 'In respect to the phrase "connected with" the subject of the action, one rule may be regarded as settled by the decisions, and it is recommended by its good sense, and its convenience in

practice. The connection must be immediate and direct. . . . the connection must be such that the parties could be supposed to have foreseen and contemplated it in their mutual acts; in other words, that the parties must be assumed to have had this connection and its consequences in view when they dealt with each other.' Pomeroy, Code Remedies, 5th ed., sec. 652, p. 1059, sec. 670, p. 1085; *Schnepp v. Richardson, supra.*"

If it arises out of the same transaction or is connected with the subject of the action, a tort claim may be pleaded as a counterclaim against a contract claim. *King v. Libbey,* 253 N.C. 188, 116 S.E. 2d 339; *Hancammon v. Carr, supra.*

"In litigation involving the assets of an estate even though complicated as to parties and involving multiple demands for relief, objection for misjoinder of causes and parties has an excellent chance of being overruled." 25 N.C. L. Rev. 22.

It seems clear to us that defendant's counterclaim is connected with the subject of plaintiff's action. The specific subject of the action is the contract between plaintiff and her father, and the court's inquiry is whether there was a breach of the contract, and, if so, in what amount the father's estate is indebted to plaintiff by reason thereof. The promised care of the father and attention to his needs may well have included the transaction of some business in his behalf, such as the sale of timber and collection of rents. But, if not, it was certainly within the contemplation of the parties to the contract that the father would, in the performance on his part, take into consideration the conversion of his assets by plaintiff. Indeed, this may explain the alleged failure of the father to make the promised provision for his daughter in his will. The adjustment of plaintiff's claim and defendant's counterclaim is necessary to a full and final determination of the controversy.

As stated above, K. D. Burton is not presently a party to the action. He is a resident of Virginia. "As a general rule a person over whom the court has no jurisdiction cannot be ordered to be brought in as a proper or necessary party to the action. . . ." 67 C.J.S., Parties, s. 74(k), pp. 1042-3. Jurisdiction of a party in an action *in personam,* as is the instant action, can only be acquired by personal service of process within the territorial jurisdiction of the court, or by acceptance of service, or by general appearance, active or constructive. *Warlick v. Reynolds,* 151 N.C. 606, 66 S.E. 657. In an action *in personam* constructive service (by publication, or personal service outside the State) upon a nonresident is ineffectual for any purpose. *Stevens v. Cecil,* 214

N.C. 217, 199 S.E. 161; McIntosh: North Carolina Practice and Procedure (2d ed. 1956), s. 911, p. 479.

If jurisdiction of K. D. Burton is lawfully acquired, he is a proper, and perhaps a necessary, party. *Casaretto v. DeLucchi*, 174 P. 2d 328 (Cal. 1946), is in point. This case involved an action to recover the balance due on meat sold by plaintiff to defendants. Defendants set up a counterclaim alleging they had been overcharged and that plaintiff and one Schroeter had conspired to overcharge them. Shroeter was made a party. Demurrer to the counterclaim was overruled. The jury found for defendants. The appellate court affirmed, holding that there was not a misjoinder of parties and causes, that Schroeter was properly made a party, and that his presence was necessary to a complete determination of the controversy. See also: *Lesnik v. Public Industrials Corp.*, 144 F. 2d 968 (2nd. Cir. 1944); *Lumber Co. v. Silas*, 184 S.E. 286 (Ga. 1936); *George W. Woods, Inc. v. Althauser*, 209 N.Y.S. 416 (1925).

The judgment below is
Affirmed.