State v. Orion Processing, LLC, 2017 NCBC 20.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF WAKE | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>13 CVS 7161 |

STATE OF NORTH CAROLINA, *ex rel.*
ROY COOPER, Attorney General, and
THE NORTH CAROLINA STATE BAR,

      Plaintiffs,

    v.

ORION PROCESSING, LLC, d/b/a World
Law Processing, World Law Debt, World
Law Group, and World Law Plan; SWIFT
ROCK FINANCIAL, INC., d/b/a World
Law Debt, World Law Group, and World
Law Plan; DERIN ROBERT SCOTT;
BRADLEY JAMES HASKINS, d/b/a
World Law Group; WORLD LAW
SOUTH, INC., d/b/a World Law Group;

And GLOBAL CLIENT SOLUTIONS,
LLC;

      Defendants.

**OPINION, DEFAULT JUDGMENT and PERMANENT INJUNCTION AGAINST DEFENDANTS SWIFT ROCK FINANCIAL, INC., BRADLEY JAMES HASKINS, and WORLD LAW SOUTH, INC.**

1.   THIS MATTER is before the Court on Plaintiffs', the State of North Carolina, *ex rel.* Josh Stein, Attorney General and the North Carolina State Bar, Motion for Judgment by Default Against Defendants Swift Rock Financial, Inc., Bradley James Haskins, and World Law South, Inc. ("Plaintiffs' Motion"). For the reasons expressed below, Plaintiffs' Motion is GRANTED, and the Court hereby enters its final judgment.

> *North Carolina Department of Justice, by M. Lynne Weaver, Special Deputy Attorney General, for Plaintiff the State of North Carolina ex rel. Josh Stein, Attorney General.*

*The North Carolina State Bar, Katherine Jean, Counsel, and David R. Johnson, Deputy Counsel, for Plaintiff the North Carolina State Bar.*

*Blanchard, Miller, Lewis & Isley, P.A. by E. Hardy Lewis for Defendant Orion Processing, LLC.*

Gale, Chief Judge.

## I.    INTRODUCTION

2.    Plaintiffs, the State of North Carolina ("the State"), and the North Carolina State Bar ("State Bar") filed a complaint in Wake County Superior Court alleging Defendants collectively have engaged in a scheme offering illegal debt adjusting services and unauthorized legal services to North Carolina consumers in violation of the statutes prohibiting debt adjusting, the unauthorized practice of law, and unfair and deceptive trade practices.

3.    The Plaintiffs' present motion seeks the entry of a default judgment and a permanent injunction against Defendants Swift Rock Financial, Inc., Bradley James Haskins, and World Law South, Inc.

4.    The Court concludes that, based upon the record, including the verified Complaint and Amended Complaint and their accompanying exhibits—the averments of which are deemed admitted by the defaulting Defendants' default, the Plaintiffs' Motion should be GRANTED.

## II.    PROCEDURAL HISTORY

5.    Plaintiffs in this case are the State of North Carolina, by and through its Attorney General, Josh Stein, and the North Carolina State Bar, a state agency. Plaintiffs have standing to bring this action pursuant to N.C. Gen. Stat. §§ 75-15, 14-425, and 84-37.

6.      Plaintiffs filed their original Complaint on May 22, 2013.

7.      On May 23, 2013, the Court entered a Temporary Restraining Order, enjoining Defendants Orion Processing, LLC ("Orion"), Swift Rock Financial, Inc. ("Swift Rock"), and Derin Robert Scott ("Scott"), and all persons in active concert with them, from soliciting or enrolling North Carolina customers in Defendants' debt settlement program, from collecting further fees from North Carolina customers for illegal debt adjusting services, and from engaging in the unauthorized practice of law in North Carolina.

8.      On June 4, 2013, the Court entered a Preliminary Injunction Order, continuing the terms of the Temporary Restraining Order.

9.      Swift Rock failed to appear or to file an answer or other responsive pleading, and an entry of default was entered against Swift Rock on September 26, 2013.

10.     Plaintiffs filed an Amended Complaint on June 25, 2014, naming World Law South, Inc. ("WLS") and Bradley James Haskins ("Haskins") as additional named defendants.

11.     On October 6, 2014, the Chief Justice designated the case as exceptional pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts and assigned the undersigned, James L. Gale, as the presiding judge.  The parties agreed that the Local Rules of the North Carolina Business Court would apply to this case even though it was not designated as a mandatory complex business case.

12.     WLS, through counsel, appeared in the action, and on October 10, 2014, WLS filed a motion to dismiss.

13.     On February 27, 2015, Orion filed a voluntary petition for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas.

14.     On March 13, 2015, WLS's counsel filed a notice of discharge, termination, and withdrawal from the proceeding.  Subsequently, on April 6, 2015, the Court entered an Order allowing WLS's counsel's withdrawal.

15.     Haskins failed to appear, plead, or otherwise defend himself in this action.  Plaintiffs filed an Affidavit of Service of Process on Defendant Bradley James Haskins on May 22, 2015.  The Court entered an Entry of Default against Haskins on June 3, 2015.  Haskins never filed a motion to set aside the Entry of Default or otherwise responded to the Entry of Default entered against him.

16.     On November 9, 2015, WLS's motion to dismiss was denied.

17.     WLS failed to file an answer and an entry of default was entered against WLS on February 19, 2016.

18.     On December 19, 2016, Plaintiffs filed Plaintiffs' Motion for Judgment By Default Against Defendants Swift Rock, Haskins, and WLS.  Defendants Swift Rock, Haskins, and WLS did not file any response motions or motions to set aside the entries of default.

19.     On January 4, 2017, Haskins emailed the Court regarding this action, asserting that Plaintiffs have improperly served Haskins with the documents in this

matter and that Plaintiffs should have served the documents to Haskins at his address in Europe. The Court forwarded this correspondence to Plaintiffs so that all parties were aware of the communication.

20. Because Defendants Haskins, Swift Rock, and WLS did not respond to Plaintiffs' Motion nor did they file motions to set aside their entries of default, the Court finds that Plaintiffs' Motion is ripe for disposition.

## III. SUMMARY OF FACTS

21. As detailed in Plaintiffs' Complaint and Amended Complaint, and the additional evidence presented with the Motion for Summary Judgment, Orion offered illegal debt adjusting services to financially distressed consumers in North Carolina and other states, initially under its own name and later under the name "World Law Group" or one of several "World Law" names. After beginning its operations under the World Law name in 2010, Orion, together with Haskins and WLS, also began providing its debt adjusting customers with legal services, held itself out as a law firm, and told its customers that it was providing the services of attorneys. At no time was Orion a law firm or otherwise authorized to provide legal services to its customers in North Carolina.

22. On January 14, 2008, Scott formed Swift Rock, a Texas company, for the purpose of offering and engaging in debt adjusting. Swift Rock marketed debt settlement services directly to consumers and enrolled consumers in debt settlement plans.

23.     On June 2, 2008, Scott formed Orion as a Texas limited liability company. Scott is the sole member and manager of Orion. After Orion was formed, the functions of Swift Rock and Orion were divided. Swift Rock focused on marketing to and enrolling financially distressed consumers with substantial amounts of credit card debt, representing that it was experienced in negotiating substantially reduced settlements with consumers' creditors to reduce or eliminate consumers' debts without bankruptcy.

24.     Orion focused on servicing the customers once they were enrolled in the debt settlement program. Once customers were enrolled by Swift Rock, Orion's employees confirmed the sale, performed any ostensible debt negotiation services, and handled all further communications with the customer and the customer's creditors.

25.     Once consumers were enrolled in the debt settlement program, Orion instructed customers to stop paying their creditors. Instead, customers were instructed to make monthly payments into their debt settlement program under the promise that Orion would use the funds to negotiate settlements of the customer's debts for considerably less than the amount owed. Customers' funds were held by a third party, Global Client Solutions, LLC ("Global").[1]

---

[1] Global is a third party payment processor that acted as an escrow agent. Global debited the customer's bank account monthly and deposited those funds in a "special purpose account" in the customer's name in a third party bank. Global disbursed Orion's and Swift Rock's fees from the customer's special purpose account, pursuant to the customer's debt settlement agreement. If and when a settlement was reached, Global disbursed payment to the customer's creditor. Global was named as a third-party Defendant in the case solely for injunctive purposes, in order to ensure the cessation of the disbursement of further illegal fees to Defendants. Global is unrelated to the Defendants, and Plaintiffs voluntarily

26. The customer's monthly payment included Orion's and Swift Rock's fees. These fees included advance fees for joining the program and recurring monthly fees for Orion's services. Whatever amounts remained from these monthly payments after Orion's and Swift Rock's fees were deducted were to be accumulated for eventual use in settling the customer's debts. As a result of the deduction of these advance fees, a customer typically had to participate in the program for two to four years before sufficient funds accumulated to offer creditors.

27. Swift Rock and Orion operated in this fashion until approximately sometime in 2010.

28. In late 2009, because of abuses by the debt settlement industry, in a rule-making proceeding, the Federal Trade Commission ("FTC") proposed amendments to the federal Telemarketing Sales Rule ("TSR") that would prohibit debt relief providers, including debt settlement companies, from collecting advance fees prior to actually settling consumers' debts. (FTC Telemarketing Sales Rule, 74 Fed. Reg. 41988 (proposed August 19, 2009)).

29. Seeking a means of continuing Orion's and Swift Rock's debt settlement business and apparently believing that the proposed FTC regulation exempted law firms, during the spring of 2010, Scott met with Haskins in Fort Lauderdale, Florida. Haskins, who is licensed as an attorney in Texas, represented that he was the principal of a large international law firm called the "World Law Group." In reality, there was no large, international law firm headed by Haskins.

---

dismissed Global as a Defendant on June 10, 2015. The use of the term "Defendants" in this Order does not refer to Global.

30. Orion and Haskins agreed to jointly continue providing Orion's and Swift Rock's debt settlement services under the "World Law" name. Orion's Chief Operating Officer David S. Klein ("Klein") executed a Memorandum of Understanding ("MoU") on behalf of Orion with "World Law Group LLP" that recited an effective date of July 18, 2010. The MoU provided that Orion would continue to negotiate and settle debts on behalf of customers while World Law would purportedly provide Orion's customers with legal services.

31. After reaching an agreement with Haskins, in April 2011, Orion filed an assumed name certificate with the clerk for Travis County, Texas, identifying "World Law Debt" as an assumed name of Orion. Orion, holding itself out as "World Law Debt," including on Internet websites, offered to provide the services of attorneys to customers. The Defendants' form contracts with consumers (called "Client Service Agreements" ("CSAs")) included provisions representing that "World Law Debt" would provide a local attorney who would provide legal advice "throughout the representation." The CSAs included this statement:

> The local attorney will review CLIENT'S case files, consult with CLIENT, explain to CLIENT their [sic] options if served or threatened with a lawsuit, and prepare and deliver to client, ready for client to file, a full response to any debt collection lawsuit filed against CLIENT, stemming from an accepted and enrolled trade line, while advising the CLIENT with regards to state and/or federal debt collection laws.

32. Orion continued to provide debt adjusting services to consumers following its agreement with World Law. Defendants' CSAs purported to reflect that the customer was contracting with a World Law entity—variably identified as "World Law Debt," "World Law Group," or "World Law Plan"—and that World Law would

provide an attorney for the debtor in addition to providing debt adjusting services. Orion's employees handled all of the debt adjusting services. Orion's employees held themselves out to consumers as being "paralegals" and "litigation specialists" with the "law firm" "World Law," "World Law Group," and later, "World Law South," although there was no such law firm.

33. In many instances, customers who followed Orion's instructions to stop paying their creditors were sued by their creditors for non-payment. Orion's employees advised customers to forward all legal pleadings and documents to Orion and represented that "World Law" attorneys would provide legal assistance to the customers. Even though the CSAs stated customers would receive the assistance of an attorney licensed in the customer's state, no known North Carolina attorneys actually communicated with Orion's employees or with North Carolina customers to give advice about their lawsuits.

34. Instead, Orion employees received prepared form pleadings from anonymous "World Law" email addresses, such as attorneys22@worldlawdirect.com, and Orion employees could not identify who had prepared them or where they had been prepared. The prepared "answers" to lawsuits were all based on the same document template; in almost every instance only the name of the parties, the court caption, and information about the customer's account differed. The form answer asserted patently frivolous defenses and claims that had no legal or factual basis,

which caused some customers to be sanctioned by courts.[2]  Orion also provided customers with prepared form responses to discovery and motions for summary judgment.  These documents also made false statements of fact or contained frivolous responses.  Orion employees instructed customers that the legal documents had been prepared specifically for their case by a "World Law" local attorney.  Orion's employees forwarded these legal documents to customers and advised them to sign the documents as *pro se* defendants, and instructed the customers on how to serve them on the plaintiff-creditor and file them with local courts.  Virtually identical frivolous pleadings were filed in more than 120 cases brought by creditors against World Law's customers in North Carolina courts.

35.    Orion's employees also instructed customers to make various assertions and claims in court using scripts provided by Orion.  If the hearing was one in which judgment might be awarded, such as summary judgment, a person who represented himself or herself as being with "World Law" sometimes contacted the customer by email and instructed the customer to demand "federal arbitration" at the hearing.  Customers were not told what arbitration involved or that they would have to pay an arbitration fee.  In response, many courts denied consumers' requests for arbitration or imposed deadlines on consumers to initiate arbitration.  Other courts allowed the requests.

---

[2] For example, the "answers" routinely stated that the customer never opened the credit card accounts at issue, even though the customer previously had not disputed that they owed the debts, and in fact, had instructed World Law to settle the same debts.

36. If the court allowed arbitration, Orion employees often submitted an arbitration claim on behalf of the customer to the American Arbitration Association ("AAA"). All such claims were virtually identical. In almost all instances, the customer's representative was identified as Haskins.

37. Under Defendants' World Law scheme, Orion continued to charge steep advance fees to customers, including those in North Carolina. Fees charged by Orion to North Carolina customers under the CSAs included—a $199 initial enrollment fee, a monthly fee of $84.95 designated as an "attorney fee," a "bundled legal service" fee, and a "debt settlement" fee, which was charged each month and was based on the amount of the consumer's enrolled debts. Virtually all of the fees were collected in advance of any attempt by Orion to settle a customer's debts. On a monthly basis, Global disbursed these fees to Orion or, at Orion's direction, to Swift Rock or to third parties that had enrolled the customer, except for a monthly bank fee of $9.45, which was retained by Global. Orion authorized Global to pay "World Law" $20.00 per month from each enrolled consumer's account as an "attorney administration fee." At Orion's authorization, this $20.00 monthly "attorney administration fee" was disbursed by Global into a bank account in the name of a WLD Price Global, Inc., a then-dissolved business corporation solely owned by Haskins.

38. These activities persisted in North Carolina until the Temporary Restraining Order and Preliminary Injunction Order was entered by this Court. After the Preliminary Injunction Order was entered by the Court, Global continued to draft customers' accounts for Defendants' fees, but Global held the fees in suspense

in customers' accounts and did not disburse any fees to Orion, Swift Rock, or any third parties, except for Global's bank fee.

39. Following the Court's entry of its Preliminary Injunction Order, in August 2013, Haskins caused to be created Defendant "World Law South, Inc.," ("WLS") which was a North Carolina corporation. Notwithstanding the Preliminary Injunction Order's express provision that its terms applied to all persons "acting in concert" with Defendants, WLS attempted to maintain that, while its business was "identical" to that of "World Law Group," because WLS was not an original named defendant and was not expressly named in the Court's Preliminary Injunction Order (because it had not yet been formed), WLS could therefore provide debt adjusting and legal services to consumers. Defendants then proceeded to operate under the WLS name in communications with North Carolina customers' and customers' creditors.

40. Defendants continued to perform debt settlement services to existing customers. Orion continued to provide legal documents to North Carolina customers with instructions for filing them in North Carolina courts, sometimes under the name "World Law South," and to initiate arbitration proceedings on behalf of North Carolina customers.

41. Most customers' debts were not settled,[3] and many customers' debt situations were significantly worsened as a result of their participation in

---

[3] Defendants' failure to settle customers' debts and misrepresentations to customers are evidenced by Court-appointed Trustee James K. Pendergrass, Jr.'s status report from February 2015, showing that, five months after WLS sought "immediate relief" from the Court for the handling of customers' funds after Global terminated its relationship with Defendants in September 2014, and WLS was subsequently unable to deposit customers' checks at a financial institution – the Trustee was able to verify the existence of only 41

Defendants' program.  Under the terms of the World Law CSA, much of customers' monies were earmarked for Defendants' advance fees.  As a result, many customers were unable to accumulate sufficient funds to settle their debts, their debts were not settled, and their creditors went unpaid—causing many creditors to sue the customer-debtors, and/or forcing some customers into bankruptcy.

42.    The sole person at "World Law Group" who management of Orion understood to be in charge of and responsible for "World Law Group" and with whom they communicated was Haskins.

43.    On August 17, 2015, the federal Consumer Financial Protection Bureau ("CFPB") filed a civil enforcement action against Defendants in the U.S. District Court for the Southern District of Florida, alleging that Defendants had engaged in violations of the federal TSR by collecting illegal advance fees from consumers for debt relief services[4] and had engaged in unfair and deceptive practices.  The CFPB obtained a nationwide injunction prohibiting Defendants from engaging in debt relief and related legal activities, and the federal court appointed a Receiver to assume control over Defendants' enterprise, which was shut down.

44.    Since early 2010, at least 1,427 North Carolina consumers have entered into agreements ("Client Service Agreements") for debt relief services that were provided by Orion through Orion's arrangement with Haskins (d/b/a World Law

---

actual agreed-upon settlements with customers' creditors, out of 1130 checks and negotiable instruments received from customers, which was an actual settlement rate of 3.6 percent. (Interim Monthly Status Report by Trustee [February 2015], at pages 3-4, filed March 11, 2015.)

[4] The federal debt relief services rule, which prohibits the collection of advance fees for debt relief services, became effective on October 27, 2010.

Group, and later d/b/a WLS). From early 2010 until September 1, 2014, North Carolina customers paid a total of at least $8,549,095.03 into the "World Law" debt settlement program. When Global terminated its business relationship with Defendants effective September 1, 2014, Global issued refunds to North Carolina customers of Defendants' fees that had been withheld from Defendants and retained in customers' special purpose accounts pursuant to the Court's Preliminary Injunction Order of June 4, 2013, together with any amounts that had been set aside to pay customers' creditors—leaving a total of at least $3,170,306.00 in fees that were paid to Defendants that have not been returned to consumers or disbursed to consumers' creditors.

## IV. ANALYSIS

45. Under Rule 55 of the North Carolina Rules of Civil Procedure, "[w]hen default is entered due to a defendant's failure to answer, the substantive allegations contained in plaintiff's complaint are no longer in issue, and for the purposes of entry of default and default judgment, are deemed admitted." *Luke v. Omega Consulting Grp., LC*, 194 N.C. App. 745, 751, 670 S.E.2d 604, 609 (2009) (citing *Blankenship v. Town & Country Ford, Inc.*, 174 N.C. App. 764, 767, 622 S.E.2d 638, 640 (2005)). Thus, under Rule 55, judgment by default may be entered by a court upon an entry of default and finding that the complaint supports the recovery sought by Plaintiffs. N.C. R. Civ. P. 55. *See, e.g., Webb v. McJas, Inc.*, 228 N.C. App. 129, 133, 745 S.E.2d 21, 24 (2013).

46. On January 4, 2017, Haskins emailed the Court regarding this action, asserting that Plaintiffs have improperly served Haskins with the documents in this matter and that Plaintiffs should have served the documents to Haskins at his address in Europe. Haskins, however, filed no motion to set aside the Entry of Default entered against him or response to Plaintiff's motion for entry of default judgment. Haskins' email clearly demonstrates that Haskins knows how to contact the Court, is aware of the Court's web domain address, and has access the Court's website. Haskins, like the general public, has access to the entire docket for this action through the Court's website. Further, Haskins is a trained and licensed attorney. Because Haskins, Swift Rock, and WLS have not filed any proper motion to set aside the entries of default or otherwise responded to Plaintiffs' Motion for Judgment By Default, the Court finds it appropriate to enter default judgment against Haskins, Swift Rock, and WLS.

47. Defendants have engaged in a joint enterprise to provide illegal debt adjusting and legal services, and therefore they are jointly and severally liable for all actions of their co-conspirators. "A conspiracy is generally defined as an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful manner." *Burton v. Dixon*, 259 N.C. 473, 476, 131 S.E.2d 27, 30 (1963). "If a conspiracy is formed and an overt act, causing damage, is committed by any one or more of the conspirators in furtherance of the conspiracy, all of the conspirators are liable." *Id.* at 476, 131 S.E.2d at 30. "The liability of the conspirators is joint and several." *Id.* at 477, 131 S.E.2d at 30; *see also Dickens v. Puryear*, 302 N.C. 437, 456,

276 S.E.2d 325, 337 (1981); *Neugent v. Beroth Oil Co.*, 149 N.C. App. 38, 53, 560 S.E.2d 829, 838 (2002). A joint enterprise is the pursuit of a common purpose by two or more persons or entities for their mutual benefit. *BDM Invs. v. Lenhil, Inc.*, No. 11 CVS 449, 2012 NCBC LEXIS 7, at *70–71 (N.C. Super. Ct. Jan. 18, 2012); *Slaughter v. Slaughter*, 93 N.C. App. 717, 720, 379 S.E.2d 98, 100 (1989). When the parties to a joint enterprise or joint venture agree to pursue illegal activity, there is a conspiracy, and each conspirator is jointly and severally liable for any resulting harm from the overt act of one of the parties. *Burton,* 259 N.C. at 477, 131 S.E.2d at 30; *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337. Plaintiffs' Amended Complaint amply pleads that all Defendants, including Orion, Swift Rock, Haskins, and WLS have acted together in a common illegal enterprise. Therefore, they are jointly and severally liable for all acts of the enterprise.

48. The agreement between Orion and Haskins (doing business as World Law Group, and later as WLS) under which Haskins agreed to provide legal services to Orion's and Swift Rock's debt adjusting customers created a joint enterprise. Since the activities of the joint enterprise consisted of illegal activities in North Carolina, debt adjusting and the unauthorized practice of law, Orion, Swift Rock, and Haskins entered into a conspiracy to violate North Carolina law. *See McAdams v. Blue*, 3 N.C. App. 169, 173, 164 S.E.2d 490, 493–94 (1968). Each conspirator is jointly and severally liable for any resulting harm from the overt act of one of the parties. *Burton*, 259 N.C. at 476–77, 131 S.E.2d at 30.

49.     The Debt Adjusting Act, N.C. Gen. Stat. § 14-424, prohibits any person from offering, attempting to engage, or engaging in "debt adjusting," as that term is defined in N.C. Gen. Stat. § 14-423. N.C. Gen. Stat. § 14-424 (2015). "Debt adjusting" is defined as follows:

> "Debt adjusting" means entering into or making a contract, express or implied, with a particular debtor whereby the debtor agrees to pay a certain amount of money periodically to the person engaged in the debt adjusting business and that person, for consideration, agrees to distribute, or distributes the same among certain specified creditors in accordance with a plan agreed upon. Debt adjusting includes the business or practice of any person who holds himself out as acting or offering or attempting to act for consideration as an intermediary between a debtor and his creditors for the purpose of settling, compounding, or in any way altering the terms of payment of any debt of a debtor, and to that end receives money or other property from the debtor, or on behalf of the debtor, for the payment to, or distribution among, the creditors of the debtor. Debt adjusting also includes the business or practice of debt settlement or foreclosure assistance whereby any person holds himself or herself out as acting for consideration as an intermediary between a debtor and the debtor's creditors for the purpose of reducing, settling, or altering the terms of the payment of any debt of the debtor, whether or not the person distributes the debtor's funds or property among the creditors, and receives a fee or other consideration for reducing, settling, or altering the terms of the payment of the debt in advance of the debt settlement having been completed or in advance of all the services agreed to having been rendered in full.

N.C. Gen. Stat. § 14-423(2) (2015).

50.     Defendants' activities plainly constitute "debt adjusting" under N.C. Gen. Stat. § 14-423. North Carolina customer-debtors paid Defendants on a monthly basis for debt relief services, including debt settlement services, with the understanding that Defendants would negotiate substantially reduced settlements of customers' debts with their creditors, and that their creditors would be paid out of

the monies accumulated in their World Law debt settlement program. Defendants collected substantial fees from customers for those services, with the vast majority of Defendants' fees being collected in advance of any settlements being reached with customers' creditors.

51.     Pursuant to N.C. Gen. Stat. § 14-425, the offering of debt adjusting services or the continuation of any debt adjusting business is an unfair and deceptive practice, in violation of N.C. Gen. Stat. § 75-1.1. N.C. Gen. Stat. § 14-425 (2015).

52.     By engaging, or offering or attempting to engage in, debt adjusting—including by holding itself out as an intermediary between North Carolina consumer debtors and the debtors' creditors for the purpose of reducing, settling, or altering the terms of the payment of debtors' debts, and by collecting fees in advance of the settlement of debtors' debts—Defendants, doing business under various "World Law" names, have violated N.C. Gen. Stat. §§ 14-423 and 14-424.

53.     N.C. Gen. Stat. § 84-2.1 states that the practice of law in North Carolina is "defined to be performing any legal service for any other person, firm or corporation, with or without compensation," including "preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding" and "assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation. . . ." N.C. Gen. Stat. § 84-2.1 (2015).

54.     N.C. Gen. Stat. § 84-4 provides that "it shall be unlawful for any person or association of persons, except active members of the Bar of the State of North Carolina admitted and licensed to practice as attorneys-at-law, to appear as attorney

or counselor at law in any action or proceeding before any judicial body" or "to give legal advice or counsel. . . ." N.C. Gen. Stat. § 84-4 (2015).

55. N.C. Gen. Stat. § 84-5 provides that a corporation may not engage in the practice of law, including any advertising or holding out that it can provide attorneys or legal services. N.C. Gen. Stat. § 84-5 (2015).

56. Defendants Swift Rock and WLS are not law firms authorized to provide legal services in North Carolina.

57. Defendants Swift Rock and WLS are business companies that are prohibited from engaging in the practice of law in North Carolina under N.C. Gen. Stat. § 84-5.

58. Haskins is not licensed or otherwise authorized to practice law in North Carolina.

59. Defendants' agreement with customers makes clear that Defendants contracted with customers to provide legal services, including a "local" attorney to review the customer's files and to advise on options with respect to any actual or threatened lawsuits. This is an obvious violation of the prohibition against corporations practicing law under N.C. Gen. Stat. § 84-5.

60. The documents Defendants provided to North Carolina customers were legal documents. The documents consisted of answers to be filed in lawsuits, responses to discovery requests, and responses to motions for summary judgment.

61. Defendants gave legal advice to customers, including specific instructions to customers on how to file and serve the prepared pleadings and what to say to courts.

62. By representing in communications with North Carolina customers and with customers' creditors, that Defendants, doing business as "World Law," could provide the services of attorneys, including providing a local attorney to customers, Defendants have violated N.C. Gen. Stat. §§ 84-4 and -5.

63. By preparing and providing court pleadings and other legal documents to North Carolina customers to represent themselves *pro se*, Defendants violated N.C. Gen. Stat. §§ 84-4 and -5.

64. By providing legal advice to North Carolina customers on defending lawsuits, Defendants violated N.C. Gen. Stat. §§ 84-4 and -5.

65. The Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1, prohibits any person from engaging in an unfair or deceptive practice in or affecting commerce. Defendants' adjusting activities and provision of legal services to North Carolina consumers are activities in or affecting commerce in this State.

66. By engaging, or offering, or attempting to engage in, debt adjusting, Defendants have violated N.C. Gen. Stat. § 75-1.1.

67. By making false or misleading representations to consumers—including that: (a) "World Law Group," "World Law South," and/or "World Law" was a law firm, when it was not; (b) Defendants would provide a local attorney to customers to represent them in legal actions brought by their creditors, when Defendants did not

provide a local attorney, and customers never spoke with or had access to any attorney, let alone a local attorney; (c) The pleadings, legal documents and legal advice provided by Defendants to customers had been prepared specifically for their situation by a local attorney, when in fact, they were form pleadings and no identified attorney had prepared them; (d) Defendants would settle customers' debts for reduced amounts with their creditors and save customers money, leaving them in better financial situations, when in fact, in most instances, customers' debts were not settled and customers lost money due to Defendants' onerous front-loaded fee scheme; (e) State and federal laws required customer funds to be held in an attorney or attorney based trust account, when no such laws existed; and (f) Customers' funds would be placed into an attorney or attorney based trust account, when they were not— Defendants have violated N.C. Gen. Stat. § 75-1.1.

68. Pursuant to N.C. Gen. Stat. § 75-15.1 and § 14-425, Plaintiffs are entitled to an award of the disgorgement of all amounts paid by North Carolina consumers into Defendants' debt settlement program that have not previously been refunded or paid to consumers' creditors.

69. Pursuant to N.C. Gen. Stat. § 75-15.2 and § 14-425, in any suit brought by the Attorney General, in which the defendant is found to have violated N.C. Gen. Stat. § 75-1.1, the Court may impose a civil penalty of up to $5,000 for each violation. Further, in any action brought by the Attorney General under Chapter 75, where it is shown that an action or practice when committed was specifically prohibited by a court order, the Court may, in its discretion, impose a civil penalty up to $5,000 per

violation. In determining the amount of the civil penalty, the Court is to consider all relevant circumstances, including, but not limited to, the extent of the harm caused by the conduct constituting a violation, the nature and persistence of such conduct, the length of time over which the conduct occurred, and any corrective action taken by the defendant.

70. Based upon this record, the Court finds that an award of civil penalties is justified. From its inception, Orion's and Swift Rock's collection of advance fees for their debt adjusting services was in violation of North Carolina law. Defendants formulated their "World Law" scheme in a willful, express attempt to evade upcoming federal rules by cloaking their debt settlement services as purported legal services. As set forth above, by falsely representing to consumers that they would provide them with legal representation – including a local attorney – who would represent them and negotiate with their creditors, Defendants deceptively induced vulnerable, financially-strapped consumers to pay them substantial monies for settlement of their debts. Instead, Defendants provided virtually no meaningful services to consumers and caused them substantial harm, leading many consumers to be sued by their creditors, and to file for bankruptcy, and even causing some to be sanctioned by courts because of Defendants' false pleadings.

71. Further, as set forth in Plaintiffs' Complaint and Amended Complaint, prior to filing suit in 2013, both the State and the State Bar issued cease and desist letters to Defendants, warning them that their activities constituted illegal debt adjusting and the unauthorized practice of law in North Carolina. Notwithstanding

Plaintiffs' notifications, Defendants continued their activities unabated. Only after this Court issued its Preliminary Injunction Order were the payment of illegal fees to Defendants halted through Global's cessation of turning over fees to Defendants and its holding of Defendants' fees in customers' accounts. However, notwithstanding the Court's Preliminary Injunction Order, Defendants continued to provide form legal pleadings to customers to be filed in North Carolina courts, continued to purport to represent North Carolina customers in arbitration, and continued to provide legal advice to North Carolina customers. These activities prompted Plaintiffs to file a motion for contempt, which was accompanied by substantial evidence of Defendants' violations. Defendants' activities only ceased after the CFPB brought a federal enforcement action against Defendants and a federal court appointed a receiver to shut down Defendants' illegal operation, at which time Plaintiffs' motion for contempt was withdrawn as moot.

## V.     JUDGMENT AND PERMANENT INJUNCTION

For the reasons set forth herein, it is hereby ORDERED, ADJUDGED and DECREED that:

1.     Plaintiffs' Motion for Judgment by Default Against Defendants Swift Rock Financial, Inc., Bradley James Haskins, and World Law South, Inc. is hereby GRANTED.

2.     Pursuant to Rule 65 of the North Carolina Rules of Civil Procedure, Swift Rock Financial, Inc., Bradley James Haskins, and World Law South, Inc. and their agents, servants, employees, officers, members, directors, affiliates,

subsidiaries, representatives, attorneys, successors, heirs, and assignees, and any other person acting under their direction and control, including through any corporation, trust, or other device, are permanently enjoined from engaging in, or providing substantial assistance to others engaging in any acts or activities constituting debt adjusting, the practice of law, or unfair and deceptive trade practices in North Carolina, including but not limited to being enjoined from the following:

A.    Advertising, soliciting or offering debt adjusting services or legal services, directly or indirectly, to North Carolina consumers;

B.    Performing or engaging in any debt adjusting services or performing or providing any legal services, directly or indirectly, for or on behalf of North Carolina consumers; or

C.    Receiving or collecting any money or other consideration from any North Carolina consumer for debt adjusting services or legal services.

3.    As used in this injunction, "debt adjusting services" mean and include the following:

A.    The offering or undertaking to negotiate, resolve, settle, or compromise debts of North Carolina consumers, including the offering or performance of any debt adjusting service for or on behalf of North Carolina consumers as that term is defined in N.C. Gen. Stat. § 14-423;

B.    Any "debt relief service" as that term is defined in the Telemarketing Sales Rule, 16 C.F.R. § 310.2(m); and

C.    Any related, analogous, or similar service which is offered for the purported purpose of assisting North Carolina consumers with debt relief, relief from consumers' creditors, or increasing consumers' access to credit; including but not limited to relief from student loans, mortgage loans, or the provision of credit repair services.

4.    As used in this injunction, "legal services" mean and include the following:

A.    Offering or performing any legal service for another person, firm, or corporation in North Carolina, including legal services specifically defined and identified in N.C. Gen. Stat. §§ 84-2.1, 84-4, and 84-5;

B.    Preparing, offering to prepare, assisting in the preparation of, or providing legal pleadings, including but not limited to answers, discovery responses, affidavits, or motions, to or for use by consumers in North Carolina, including pleadings provided to the consumer for *pro se* filing or use;

C.    Providing legal advice to consumers in North Carolina, including but not limited to advice concerning defense of lawsuits brought against the consumer, instructions on filing any pleadings or

other documents with a court or tribunal, or instructions to consumers on statements and legal arguments to present to a court or other tribunal;

D.  Communicating with any court, tribunal, or creditor as an attorney or other representative of the legal interests of a North Carolina consumer whether identified as an attorney, a paralegal, or any other title or designation; and

E.  Advertising or holding out in any medium, including television advertising and the internet, to North Carolina consumers as an attorney or as having an ability to provide attorneys, legal services, or the services of an attorney.

5.  This Injunction shall be construed broadly to include any subterfuge, device, or practice engaged in by Swift Rock Financial, Inc., Bradley James Haskins, or World Law South, Inc. in an effort to evade the dictates of this Injunction.

6.  In accordance with N.C. Gen. Stat. § 84-37 and N.C. R. Civ. P. 65, no bond is required for entry of this injunction.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, pursuant to N.C. Gen. Stat. §§ 14-425, 75-1.1, and 75-15.1, the State shall have and recover of Swift Rock Financial, Inc., Bradley James Haskins, and World Law South, Inc., jointly and severally, the principal sum of three million, one hundred and seventy thousand three hundred and six dollars ($3,170,306.00), for consumer restitution and consumer protection purposes.  Pursuant to N.C. Gen. Stat. § 75-15.2 and § 14-425,

the State shall further have and recover of Swift Rock Financial, Inc., Bradley James Haskins, and World Law South, Inc., jointly and severally, the sum of six million dollars ($6,000,000.00) for civil penalties.

As claims against all other parties have been resolved by prior orders or judgments, this Default Judgment and Permanent Injunction constitutes the final adjudication of all claims involving all parties and the Court's final judgment. The action is therefore DISMISSED and further action shall be limited to enforcing judgments that have been entered.

IT IS SO ORDERED, this the 7th day of March 2017.


/s/ James L. Gale
James L. Gale
Chief Business Court Judge